GUILLERMINA CRUZ, demandante y recurrente, *v.* SUCN. DE PABLO LANDRAU DÍAZ ET AL., demandados y recurridos.

Número: R-64-46     Resuelto: 27 de junio de 1969

*Samuel R. Quiñones, Santiago Polanco Abréu, Guillermo S. Pierluissi* y *Walter Pierluissi,* abogados de la recurrente; *Félix Ochoteco, Jr.,* y *Juan R. Correa Toledo,* abogados de los recurridos.

Sala Segunda integrada por el Juez Asociado Señor Hernández Matos como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Dávila y Torres Rigual.

El Juez Asociado Señor Santana Becerra emitió la opinión del Tribunal.

Ésta es una acción de división de comunidad. Existió un concubinato entre la demandante recurrente Doña Guillermina Cruz y Don Pablo Landrau Díaz, causante de los recurridos, comenzada allá por el año 1910, siendo ambos solteros y jovencitos. Durante esa relación concubinaria, que hasta el 2 de enero de 1922 fue una *more-uxorio,* procrearon 6 hijos, reconocidos todos por su padre. En su matrimonio Don Pablo Landrau procreó otros tres hijos. (¹)

■ Después de su matrimonio en 1922 la relación concubinaria entre Doña Guillermina Cruz y Don Pablo Landrau continuó por lo menos hasta 1951, si bien dejó de ser aquella convivencia marital *more-uxorio*—a manera de matrimonio—que existía antes de él contraer nupcias. La propia recurrente en su testimonio no pretendió demostrar que durante esta segunda etapa de sus relaciones con Don Pablo Landrau ella trabajara o aportara esfuerzo alguno que tendiera a incrementar los bienes de éste. Siendo ésa la posición de la propia recurrente, el problema en este caso queda reducido a determinar si la recurrente tenía o no un interés propietario juntamente con Don Pablo Landrau en los bienes que acumularon durante su unión y convivencia

---

(¹) Según el testamento bajo el cual falleció Don Pablo Landrau, otorgado el 28 de junio de 1957, dejó una tercera parte de la herencia—legítima corta—a sus nueve hijos por partes iguales sujeto al usufructo viudal, dejó todo el otro tercio de la legítima sólo a sus hijos habidos dentro del matrimonio, y dejó todo el tercio de libre disposición a su viuda.

marital, que a esos efectos no se prolongó después del matrimonio.

Son hechos indisputados y así lo concluyó la Sala sentenciadora, que al comenzar esta relación concubinaria o unión marital Don Pablo Landrau era dueño de una participación indivisa equivalente a 9 cuerdas en una finca de mayor cabida perteneciente a su familia. Y era dueño también de un pequeño negocio con existencias por valor aproximado de $600. En la trastienda humilde de este pequeño negocio, ampliada un tanto a medida que vinieron los hijos, establecieron el hogar y convivieron como marido y mujer hasta que adquirieron una casa en Santurce y fueron a vivir allí poco antes del matrimonio de él. En este segundo hogar nació su sexto y último hijo.

Es un hecho también indubitado y así lo aceptaron las partes y concluyó la Sala sentenciadora, que durante ese período de 1910 a 1922 se adquirieron los siguientes bienes mediante compra, si bien las adquisiciones aparecen hechas sólo a nombre de Don Pablo Landrau:

(a) 18 cuerdas de terreno adquiridas de las hermanas de éste por el precio de $1,500, según escritura Núm. 47 ante el Notario Ignacio Morales Acosta, de 14 de junio de 1916;

(b) Una finca de 52.961 cuerdas adquirida por valor de $7,954.16 por escritura Núm. 7 ante el Notario Ramón S. Pesquera, otorgada en 18 de julio de 1918;

(c) Una finca de 9 cuerdas por valor de $1,500 por escritura Núm. 79 otorgada en 4 de junio de 1917 ante el Notario Francisco Soto Gras;

(d) 6.38 cuerdas adquiridas por valor de $200 según escritura Núm. 32 de 8 de julio de 1915 ante el Notario Adrián Acosta Abadía;

(e) Casa y solar en Santurce, adquirida el 22 de agosto de 1921 por el precio de $2,200.

Concluyó la Sala sentenciadora, como cuestión de hecho, que "nunca hubo convenio expreso o tácito entre Pablo Lan-

drau y Guillermina Cruz para trabajar juntos y dividir entre ellos, en alguna proporción las ganancias." No dio crédito la Sala a la declaración de la recurrente al efecto de que al comenzar la relación, ella aportó unos $400 de ahorros de su casa. Concluyó que durante los años en que ellos compartieron el mismo techo, las funciones de la demandante fueron las de ama de casa y que cualquiera trabajo adicional que realizara fue esporádico dependiendo de que le sobrase tiempo después de atender los quehaceres de la casa y la crianza de sus hijos. No obstante lo anterior, luego dejó sin resolver lo referente al trabajo de ella, como veremos.

Aceptó la Sala que la evidencia trató de demostrar que la recurrente realizaba otras actividades aparte de sus funciones de ama de casa. En efecto, la evidencia es convincente de que aportó constante trabajo y esfuerzos en actividades que condujeron al aumento y mejoramiento de la condición económica de esa convivencia.

El problema de la disposición de los derechos propietarios surgidos en el curso de una relación concubinaria—en este caso de una unión o convivencia marital sin estar casados— lo hemos estado considerando desde hace muchos años. Una de nuestras primeras expresiones asomó cuando en *Correa* v. *Quiñones*, 29 D.P.R. 52, resuelto en 1921, reconocimos que había suficiente alegación de título adverso como para malograr una acción de desahucio en precario; un alegado derecho de propiedad del allí demandado en la casa de la cual le querían desahuciar, ante una prueba que demostraba que la casa se había edificado viviendo dicho demandado con la demandante en concubinato y con dinero de ambos. Entonces apuntamos:

"Ciertamente el concubinato no puede ser por sí solo generador de derechos de clase alguna en cuanto a los que viven en tal estado y condición y desde luego el concubinato no puede originar una sociedad legal de gananciales; pero prescindiendo

en absoluto del concubinato, el demandado niega que posea en precario la parte de la casa que se le reclama pues alega que la casa pertenece en común y *proindiviso* a ambos por haberla construido con dinero de los dos y que en virtud de convenio habido entre ellos al cesar la vida común ocupa la parte que se le reclama. Esa alegación no aparece desnuda de toda prueba y por tanto es improcedente el desahucio, . . . ."

Después del caso de *Correa* afrontamos el problema en forma más directa en *Morales* v. *Cruz Vélez*, 34 D.P.R. 834, decidido en 1926. Es mucha la semejanza de hecho que existe entre los que aparecen expuestos en este caso de *Morales*, referentes a la relación concubinaria, y los del caso de autos. Se trataba ahí de una acción para que se declarara que la concubina era dueña en común proindiviso de la mitad de determinados bienes descritos, adquiridos durante la relación concubinaria. Expresamos entonces: (pág. 836)

"En realidad la prueba no sostenía la constitución de una sociedad universal entre la demandante y su causante Avelino Cruz. De ahí fue que surgió la nueva teoría de la demanda enmendada haciéndose depender la causa de acción de una unión ilícita del concubinato, alegándose específicamente que la demandante es dueña de una mitad de cada uno de los bienes descritos 'por haber sido adquiridos mientras vivió haciendo vida común con Avelino Cruz y Toro, habiendo contribuido para adquirirlos, con su trabajo, su economía, su cooperación y sus recursos.'

Cabe preguntar, pues, si tal alegación es suficiente para determinar una causa de acción, siendo éste el primer error que discute la apelante."

Concluyendo que la demanda no era suficiente para establecer una causa de acción, dijimos: (pág. 841)

"Si asumiéramos que el presente caso fuera uno al que pudieran ser aplicables los principios en equidad que se desenvuelven en los casos examinados, no aparece, sin embargo, de los términos de la demanda enmendada alegación alguna que refiera la existencia de algún convenio o sociedad universal de gananciales celebrada entre la demandante y su causante, inde-

pendiente de la vida común o relación sexual que mantuvieron durante el período de años que se indica. El derecho de la demandante en los bienes, si es que lo tuviera, se hace depender de las relaciones ilícitas que sostenían, pues esencialmente se alega que dicha demandante es dueña de la mitad de cada uno de ellos 'por haber sido adquiridos mientras vivió haciendo vida común con Avelino Cruz y Toro'. No es importante que se añada, 'habiendo contribuido (ella) para adquirirlos, con su trabajo, su economía, su cooperación y sus recursos', toda vez que el mero hecho de que la propiedad fue adquirida por el trabajo y gastos mutuos de las partes mientras vivían juntos no creará una sociedad o comunidad de intereses en la propiedad, a falta de un convenio de que las partes tengan participación en el dominio de la propiedad. [cita] Hemos llegado, por consiguiente, a la conclusión de que la demanda no es bastante para determinar una causa de acción."

Después de resumir la prueba que desfiló en el caso, continuamos: (pág. 845)

"La prueba de la demanda, por otra parte, tendió a establecer claramente que el causante poseía algunos bienes personales y raíces antes de empezar su consorcio ilegal con la demandante; que este estado era preexistente al desarrollo e incremento de los negocios y bienes del causante y que la cooperación y trabajos de la demandante a que alude la demanda, solo fue incidental a sus funciones de concubina."

Parecida posición asumió en el presente caso la Sala sentenciadora en sus conclusiones de derecho.

Considerando que a partir de 1922 Don Pablo Landrau había poseído los bienes como único dueño con exclusión absoluta de la recurrente, en forma ininterrumpida por más de 30 años, por lo cual entendió que procedía interponer la prescripción extraordinaria de 30 años derrotando así la causa de acción, la Sala expresamente hizo constar que no era necesario resolver si los trabajos realizados por Guillermina Cruz eran meramente incidentales a la relación concubinaria o si por el contrario constituían una aportación de tal naturaleza que le diera derecho a una participación en los

bienes de Landrau. A la luz del récord, y con miras a los apuntamientos que siguen, resolvemos que tenía derecho a tal participación.

■ Si las normas que rigieran hoy, y a la fecha en que la Sala resolvió el caso, fueran las que expusimos en *Morales* v. *Cruz Vélez*, antes citado, procedería una confirmación de la sentencia, sin más. Pero esos criterios no rigen. En *Torres* v. *Roldán*, 67 D.P.R. 367, decidido en 1947, afrontamos el problema con criterios más amplios y comprensivos. Se trataba, como aquí, de un pleito de división de comunidad de bienes y en que había existido relación concubinaria en el curso de la cual éstos se adquirieron. El entonces Tribunal de Distrito desestimó el pleito en moción para desestimar a base de que no existía causa de acción o razón para pedir. Revocando la sentencia dijo este Tribunal: (pág. 368)

"En esta jurisdicción una sociedad de gananciales se crea por ley únicamente mediante matrimonio; por tanto el mero concubinato no crea interés común en los bienes que adquieren los concubinos. [citas]

Sin embargo, si un hombre y una mujer mientras viven en concubinato convienen, expresa o implícitamente, en consolidar sus ingresos y participar por partes iguales en los bienes adquiridos con los mismos, las cortes exigirán de la parte que ha retenido más de lo que le corresponde, de acuerdo con lo convenido, que entregue dicho exceso. [citas]"

No nos detuvimos ahí. A renglón seguido dijimos lo siguiente:

"Es más, *aún en ausencia de un convenio expreso o implícito*, con miras a evitar un enriquecimiento injusto por parte del demandado, el demandante tiene derecho a participar, en la proporción que sus fondos hayan contribuido a su adquisición, en los bienes acumulados conjuntamente. [citas]" (Énfasis suplido.)

Refiriéndonos entonces al caso de *Morales*, se dijo: (pág. 370)

"Pero, a pesar de que la opinión en dicho caso no es tan clara como podía serlo, parece también sostener, a la página 842,

que en ausencia de un convenio, una concubina no puede recobrar su parte proporcional de los bienes, *aun cuando ella hubiese contribuido a su adquisición con su capital y trabajo*. En vista de lo antes dicho, *este último pronunciamiento, de ser así, queda revocado.*" (Énfasis suplido.)

En *Pérez* v. *Cruz*, 70 D.P.R. 933, resuelto en 1950, otra demanda de división de comunidad de bienes en circunstancias de una relación concubinaria, cuya situación de hechos aparece detalladamente expuesta a las páginas 937–938, reafirmamos la decisión de *Torres* v. *Roldán*, así: (pág. 939)

"En casos de esta naturaleza la participación de la mujer ha de fundarse siempre en el contrato celebrado, y de no existir éste, *en la labor y el esfuerzo por ella realizados*". (Énfasis suplido.)

Igual criterio, aun cuando a la luz de sus propios hechos se dispusiera de otra manera, seguimos en el de *Pereles* v. *Martinó*, 73 D.P.R. 848 (1952), a la página 856.

Finalmente, en *Danz* v. *Suau*, 82 D.P.R. 609 (1961), después de considerar una vez más el asunto, se desglosó por un Tribunal en Pleno, en forma más definida, de la siguiente manera: (pág. 617)

"Como se ve, fuera del pacto expreso probado con las propias palabras del finado,—*Pereles* v. *Martinó,* supra—la demandante tiene derecho a probar dicho pacto o su derecho a cierta participación en los bienes, en cualquiera de estas alternativas: (1) como *pacto expreso* si se puede probar mediante el testimonio de personas particulares ajenas a la relación concubinaria *Lezcano* v. *Sucn. Sifonte,* supra; (2) (2) como *pacto implícito* que se desprende *espontáneamente de la relación humana y económica* existente entre las partes durante el concubinato *Torres* v. *Roldán,* supra; (3) como un *acto justiciero* para evitar el enriquecimiento injusto, reconociendo el valor de los bienes, valores o servicios aportados por la concubina y sus correspondientes ganancias". (Énfasis nuestro.)

(2) Posterior a la decisión de este caso de *Suau,* el 21 de junio de 1962 y por la Ley Núm. 84, se derogó la Sec. 3 de la Ley de 10 de marzo de 1904 que disponía sobre quiénes eran testigos hábiles.

Hemos examinado el récord detenidamente a la luz de estos principios hoy vigentes, y a tenor de la prueba y de dichos principios de derecho, no podemos aceptar el criterio de la Sala sentenciadora de que en este caso no existían, al terminar en 1922 la relación concubinaria *more-uxorio*— a distinción de la relación concubinaria que pudo continuar después—valores económicos adquiridos o incrementados durante la convivencia de la recurrente y el causante de los recurridos por el esfuerzo, la labor y el trabajo de ella, y de ambos conjuntamente.

A los efectos de determinar el monto de su interés propietario, la recurrente pretende prolongar la situación hasta el momento mismo de la muerte del causante. En ello no tiene razón. Esta comunidad de intereses terminó al contraer Don Pablo Landrau matrimonio con otra persona. La recurrente no testificó que con posterioridad a esa fecha ella hiciera esfuerzo alguno junto a éste para producir capital o incrementar el que se había producido hasta ese momento. Aun cuando la prueba tendiera a demostrar lo contrario, como cuestión de derecho Landrau no podía generar a la vez dos comunidades distintas de intereses económicos: la sociedad legal de gananciales en su matrimonio y este otro tipo de interés comunitario en convivencia fuera de matrimonio. Así lo resolvimos en *Reyes* v. *Merlo*, 91 D.P.R. 136 (1964), en que pronunciándonos por el Tribunal en un caso que envolvía también una convivencia concubinaria, expresamos: (pág. 141)

"La adquisición que hizo Merlo de la finca rústica de 1.92 cuerdas en el barrio Santa Rosa así como la adquisición de la urbana sita en la urbanización Caparra Terrace son gananciales o por lo menos hay que tenerlas como gananciales en ausencia de prueba en contrario. El concepto de la 'comunidad de bienes' entre la demandante Angela Reyes y Alfredo Merlo como tal individuo en que se basó la demanda, así como el concepto de la 'sociedad de intereses' en que se basó la sentencia de la Sala de Distrito,—implícito también en el fallo de la Superior,—al de-

clarar con lugar la demanda, son extraños a nuestro ordenamiento civil y claramente incompatibles con los artículos del Código mencionados. Este caso no se rige, ni puede gobernarse, por las normas sentadas en *Danz* v. *Suau*, 82 D.P.R. 609 (1961) ; *Pereles* v. *Martinó*, 73 D.P.R. 848 (1952); *Pérez* v. *Cruz*, 70 D.P.R. 933 (1950), ni *Torres* v. *Roldán*, 67 D.P.R. 367 (1947).

Excepto cuando trafica con sus bienes privativos o cuando la procedencia es privativa, con relación a bienes reputados gananciales no halla acomodo en nuestra norma jurídica una 'comunidad de bienes' o una 'sociedad de intereses' constituida entre uno de los cónyuges como tal y un extraño a la sociedad, aunque se trate de bienes adquiridos mediante la industria o trabajo personal, y aunque exista con ese extraño la relación típica de un concubinato.

Lo anteriormente expuesto no impide que se desarrolle una comunidad de bienes o cualquier otra figura jurídica respecto a bienes entre *la sociedad de gananciales como tal* y un tercero. Si para la adquisición de estas propiedades gananciales la demandante aportó dinero suyo, ella podría tener un crédito o reclamación personal contra la sociedad . . . ."

Por los mismos fundamentos tampoco procede la contención de la recurrente al efecto de que su interés debe determinarse a base de la masa de bienes relictos a la muerte de Don Pablo Landrau ocurrida en 1961, y siguiendo, por *analogía*, las normas dispuestas en el Art. 1326 del Código Civil, ed. 1930, para la liquidación de bienes relictos cuando hay envueltas más de una sociedad legal de gananciales.

En este aspecto el récord demuestra una situación sumamente compleja, por razón de que las fincas adquiridas durante la relación concubinaria con la recurrente fueron agrupadas formando otros cuerpos y fueron objeto luego de infinidad de otras transacciones. El récord tampoco nos pone en condiciones de determinar ahora con certeza que la participación de la recurrente en el valor del capital acumulado al 1922, equivalía exactamente a la mitad, o exactamente a determinada porción. Al devolverse el caso, se sugiere la conveniencia de que las partes, con la anuencia del tribunal

y la ayuda de sus peritos, y en mesa de conferencia, traten de fijar racionalmente el monto de ese interés, así como el incremento natural que la participación de la recurrente haya podido tener proporcionalmente.

■ Éste es un caso de una división de comunidad de bienes que aunque atípica, tiene el mismo fin, y responde a la misma razón de ser que la división de una comunidad de bienes ortodoxa. Dispone el Art. 340 del Código Civil, ed. 1930, que serán aplicables a la división entre los partícipes en la comunidad, las reglas concernientes a la división de la herencia, siempre que no haya conflicto o incompatibilidad. Cf. *Saurí* v. *Saurí*, 39 D.P.R. 511 (1929); *Ruiz* v. *Ruiz*, 74 D.P.R. 347 (1953); *Shivell* v. *Barber y Boscio*, 92 D.P.R. 400 (1965). Y véase el Art. 1865 del Código Civil.

*Se dejará sin efecto la sentencia recurrida, y se devolverán los autos para procedimientos ulteriores que sean compatibles con los anteriores dictámenes.*