*957 TEXTO COMPLETO DE LA SENTENCIA
Esta es una acción de división de comunidad de bienes habida entre la Sra. Nancy Román Fonseca y el Sr. Juan Antonio Ruiz Gutiérrez. Su génesis es una convivencia marital (more-uxorio), que comenzó en el 1984 y finalizó en el 1995. Como fruto de esa convivencia marital, nacieron seis (6) hijos, todos reconocidos por su padre. Al inicio de la relación, ninguno tenía bienes y antes de terminar la misma, el Sr. Ruiz Gutiérrez se ganó la lotería electrónica y compraron ambos una propiedad.
¿Durante esa convivencia marital, se creó realmente una comunidad de bienes entre ellos?, y de ser así, ¿qué derechos tiene esta mujer al momento de finalizar la misma? Estos son los planteamientos ante nuestra consideración.
I. HECHOS
La Sra. Nancy Román Fonseca (en adelante, la apelada) presentó una Demanda en el presente caso, contra el Sr. Juan Antonio Ruiz Gutiérrez, su esposa y la Sociedad Legal de Gananciales compuesta por ambos (en adelante, los apelantes), el 8 de mayo de 1996.
Solicitaba en la misma, se dividiera la Comunidad de Bienes que alegadamente se había formado entre ella y el Sr. Ruiz Rodríguez, tras haber convivido maritalmente por espacio de casi diez (10) años. Los bienes objetos de división eran un premio de la Lotería Electrónica por $5,888,198.80 y una finca ubicada en el Bo. Corcobado de Hatillo.
Por su parte, los apelantes alegaron que entre la apelada y el apelante, el Sr. Ruiz Gutiérrez, no existía una Comunidad de Bienes por no existir entre ellos un pacto expreso o implícito que así lo estableciera.
Luego de los incidentes procesales pertinentes y de varios días de vistas donde se presentó prueba testifical y documental, el Tribunal de Primera Instancia, al finalizar de analizar la totalidad de la evidencia presentada y de la credibilidad que le confiriera a la misma, formuló las siguientes determinaciones de hechos que consideramos muy precisas y detalladas y están plenamente avalada por la Exposición Narrativa Estipulada de la Pmeba Oral:

"La parte demandante, Nancy Román Fonseca, convivió consensualmente con Juan Antonio Ruiz Gutiérrez por casi diez (10) años. Como producto de su convivencia consensual con el demandado, la demandante Nancy Román Fonseca, tuvo su primer hijo, el 30 de noviembre de 1985, cuando a penas tenía 14 años de edad. Continuó procreando hijos con el demandado hasta el 6 de abril de 1992, fecha en que nació su sexto y último hijo. La demandante, a los veintiún (21) años, aproximadamente, ya había procreado seis hijos, producto de las relaciones consensúales con el demandado.

Dicha relación comenzó más o menos desde que la demandante tenía trece (13) años y duró desde el 1984 hasta más o menos mediados del 1995.

*958
Allá para el 18 de junio de 1993, Juan Antonio adquirió en una farmacia un billete de la Lotto, según era su costumbre, pero en esta ocasión, el billete de la Lotto salió premiado con $5,888,198.80.

Recibido el premio, acudió Juan Antonio junto a Nancy a la sucursal de un banco en Hatillo donde abrieron una cuenta en conjunto y depositaron el primer cheque de dicho premio, el cual sería pagadero en veinte (20) anualidades de $235,118.01, luego de deducirle la cantidad de $58,881.90 por concepto de las contribuciones impuestas por ley a tales premios.

Recién recibido el premio, adquirieron una casa por $120,000.00 en el barrio Corcobado de Hatillo. Dicha casa, las partes estipularon antes de verse la vista del caso de epígrafe que sería de ambos en común pro indiviso, (participación de 50% cada uno); o sea, de Nancy Román Fonseca y José Antonio Ruiz Gutiérrez, en partes iguales.

Antes de obtenerse el premio, las partes, tanto Nancy como Juan Antonio, vivían con sus hijos en condiciones infrahumanas debido a que el único ingreso de la familia era el de él como ordeñador en una vaquería, y la casa se les estaba cayendo por el grave estado de deterioro en que estaba. Nancy se dedicaba a las tareas usuales del hogar, cocinar, limpiar la casa, lavar, planchar, cuidar a los niños y atender a su marido. Preparaba la comida para ellos y para su esposo consensual. Mantenía limpia y ordenada su casa, tenía limpio y aseado a sus hijos, llevaba sus hijos, en la mayoría de las veces, a la escuela, y al médico, en fin, llevaba a cabo las tareas comunes de una ama de casa, aun dentro de las condiciones de pobreza en que vivían.

Las condiciones de pobreza y el deterioro en que estaba la casa afectaron la forma de atender adecuadamente a sus hijos, por lo que le fueron removidos y puestos bajo la custodia de la abuela paterna doña Luz M. Gutiérrez.

Una vez obtenido el premio y adquirida la casa nueva, ellos se hacen cargo nuevamente de sus hijos y van a vivir todos juntos en la nueva casa.

Posterior a ello, en fecha no determinada, se muda Juan Antonio a una casa de madera que estaba aledaña a la de cemento, aunque seguía conviviendo con Nancy y mantenía su ropa en la casa donde quedó Nancy y los niños.

Es a esta casa de madera que llevó a su comadre, doña Milagros Díaz Santiago, amiga con la cual alegadamente compartía en un negocio cuando se pegó con el premio de la Lotto y con la cual se casó legalmente en junio de 1995.

Se presentó prueba de cómo eran las relaciones existentes entre Nancy y Juan Antonio las cuales cada vez que discutían, este último se iba a dormir al establo donde trabajaba; en otras ocasiones, a casa de su madre doña Luz, o se iba, luego de haber obtenido el premio de la Lotto, a la casa de madera donde había mudado a su comadre, quien según su testimonio sólo cocinaba y ayudaba a Nancy con el cuido de los niños.

De hecho, en el momento en que recibió el premio, alegó el demandado que llevaba semanas durmiendo en el establo y presentó unos testigos para sostener tales alegaciones. No nos mereció credibilidad alguna tales testimonios por la parcialidad que demostraron.

Nancy y Juan Antonio continuaron viviendo juntos por casi dos años, luego del premio, hasta que en junio de 1995 Juan Antonio se va finalmente de la casa y decide casarse con Milagros, el 21 de julio de dicho año.

A los dos o tres días de haberse casado Juan Antonio con Milagros, Nancy se va de la casa trasladándose a vivir a otro lugar."

*959 El Tribunal de Primera Instancia dejó consignado además, en su Sentencia, que de acuerdo a la pmeba presentada quedó probado a satisfacción la convivencia de la apelada y el apelante Ruiz Gutiérrez por casi diez (10) años, inclusive los dos años posteriores de haberse obtenido el premio de la Lotto.
También expresa que sólo le mereció credibilidad los testimonios de la apelada y el apelante Ruiz Gutiérrez, ya que los demás testigos lucían parcializados en sus testimonios, lo que le restó credibilidad. La poca confiabilidad quedó manifiesta, no sólo por lo que testificaron, sino por la manera en que lo hicieron.
Conforme a la pmeba sometida y luego de analizar el derecho vigente, el Tribunal de Primera Instancia resolvió que existía una Comunidad de Bienes entre la apelada y el apelante Ruiz Gutiérrez, por lo que le correspondía en partes iguales el premio obtenido en la Lotto y la casa adquirida en común pro indiviso. Le impuso a la parte apelante, por temeridad, el pago de las costas, gastos y $20,000.00 en concepto de honorarios de abogado.
Inconforme con el dictamen, la parte apelante acude ante este Foro y plantea, en síntesis, los siguientes errores: erró el Tribunal, conforme a su apreciación de la pmeba, al determinar que las partes convivían juntas al momento del apelante resultar agraciado con el premio y al declarar la existencia de una Comunidad de Bienes entre ellos; erró al determinar que la participación de la parte apelada era de un 50% en la Comunidad, y por último, erró al determinar que la parte apelante fuera temeraria y conceder $20,000.00 en concepto de honorarios de abogado.
Aunque las partes acudieron ante este Foro el 27 de enero del 2000, no es hasta principios de diciembre que se perfeccionó el recurso, toda vez que entre las partes surgieron dificultades para presentamos la exposición narrativa de la pmeba oral, vital en este tipo de recurso donde se cuestiona la apreciación de la pmeba hecha por el Tribunal apelado.
Analizada, minuciosamente, la exposición narrativa presentada, coincidimos con el Tribunal Sentenciador a los efectos de que defacto existía una Comunidad de Bienes entre las partes objeto de este litigio, por lo que, a falta de pmeba que demostrara lo contrario, se presumen iguales las participaciones entre ambos. Exponemos.
II. EXPOSICION Y ANALISIS
Sabido es que la apreciación de la pmeba realizada por el tribunal sentenciador debe ser objeto de gran deferencia y que no se debe intervenir con la apreciación de la pmeba reflejada en las determinaciones de hechos del tribunal apelado, en ausencia de circunstancias extraordinarias o que se demuestre que éste actuó movido por la pasión, prejuicio, parcialidad, o error manifiesto. Monllor Arzola v. Soc. Legal de Gananciales, 138 D.P.R. 600 (1995); Pérez Cruz v. Hosp. La Concepción, 115 D.P.R. 721 (1984).
El Tribunal Sentenciador, en el caso del título, aquilató la pmeba documental y testifical desfilada y le confirió la credibilidad y confiabilidad que le mereció la misma. No se desprende del récord que el mismo haya actuado de forma parcializada o prejuiciada. A raíz de la pmeba presentada, formuló las determinaciones de hechos que incluimos en esta sentencia. Dichas determinaciones están, repetimos, ampliamente respaldadas por la pmeba.
Por otro lado, los apelantes no aducen fundamentos válidos que ameriten que intervengamos con la apreciación de la pmeba presentada y con la credibilidad que le confirió Instancia a los testimonios, lo que lo condujo a concluir que entre la apelada y el apelante existió una comunidad de bienes.
El Artículo 326 de Código Civil de Puerto Rico, 31 L.P.R.A. see. 1271, dispone que "hay comunidad cuando la propiedad de una cosa o de un derecho pertenece pro indiviso a varias personas". En casos como el presente, en que existe una convivencia marital (more-uxorio), la jurisprudencia de nuestro más Alto Foro ha *960 establecido que de tal unión puede surgir una comunidad de bienes.
En Torres v. Roldan, 67 D.P.R. 367 (1947), predicó que "en esta jurisdicción, una sociedad de gananciales se crea por ley únicamente mediante matrimonio; por tanto, el mero concubinato no crea interés común en los bienes que adquieren los concubinos. Sin embargo, si un hombre y una mujer, mientras viven en concubinato, convienen, expresa o implícitamente, en consolidar sus ingresos y participar por partes iguales en los bienes adquiridos con los mismos, las cortes exigirán de la parte que ha tenido más de lo que le corresponde, de acuerdo con lo convenido, que entregue dicho exceso. Es más, aun en ausencia de un convenio expreso o implícito, con miras a evitar un enriquecimiento injusto por parte del demandado, el demandante tiene derecho a participar, en la proporción que sus fondos hayan contribuido a su adquisición, en los bienes acumulados conjuntamenle." [Enfasis nuestro]
Se reiteró lo mismo en Cruz v. Sue. Landrau Díaz, 97 D.P.R. 578 (1969), al recapitular y definir cómo probar la existencia de una comunidad o participación en los bienes adquiridos en común. La concubina tiene derecho a probar que se creó una comunidad de bienes o a su derecho a cierta participación en los bienes, en cualquiera de estas alternativas: (1) como pacto expreso, si se puede probar mediante el testimonio de personas particulares ajenas a la relación concubinaria; (2) como pacto implícito, que se desprende espontáneamente de la relación humana y económica existente entre las partes durante el concubinato; (3) como un acto justiciero, para evitar el enriquecimiento injusto, reconociendo el valor de los bienes, valores o servicios aportados por la concubina y sus correspondientes ganancias. [Enfasis nuestro]
Nos explica mas adelante, Caraballo Ramírez v. Acosta, 104 D.P.R. 474 (19-75), el cual recoje la norma establecida en los casos anteriores, que sólo se prueba la comunidad de bienes vía los primeros dos postulados antes señalados. Sea porque se hubiese convenido así expresamente, o porque la conducta de las partes demuestra que se obligaron implícitamente a aportar, y aportó cada una bienes, esfuerzo y trabajo para beneficio común. El tercer postulado se utiliza en ausencia de una comunidad y como vehículo remediador para evitar un enriquecimiento injusto por alguna de las partes.
En el caso de autos, no estamos ante un pacto expreso, pero definitivamente lo estamos ante un pacto implícito. No estamos hablando de un queridato, relación concubinaria que se establece cuando una de las partes está casada, sino de una convivencia a manera de matrimonio, donde ninguno de los dos había contraído nupcias anteriormente y que se mantuvo sólida por espacio de diez (10) años y fue producto de esa unión seis (6) hijos. Juntos sufrieron penurias y necesidades y la apelada siempre estuvo al lado del apelante, en las buenas y en las malas. No era necesario haberlo jurado ante el altar, ya que sus acciones lo confirmaban cada día. El hogar constituido y sostenido por una década, no fue, ni se constituyó en alcoba que recoge el último bostezo de una madrugada. Esto en cuanto a la relación humana afectiva se refiere.
Sobre la pmeba del trabajo, esfuerzos y servicios aportados, quedó probado que la apelada se dedicaba a las tareas usuales del hogar, tales como cocinar, limpiar la casa, lavar, planchar, cuidar a los niños, llevarlos a la escuela y al médico y a atender a su marido. La labor y energía desplegada por ella al realizar todos estos quehaceres, equivalen a su aportación a la comunidad. El trabajo del hogar se considera una clara aportación a la convivencia marital. Sería discriminatorio verlo de otra forma.
Establecido que entre la apelada y el apelante se constituyó por acuerdo implícito una comunidad de bienes, resta establecer el método a ser utilizado en la determinación de la porción de los partícipes en la comunidad, en ausencia de pacto expreso. El Artículo 327 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 1272, dispone:

"El concurso de los partícipes, tanto en los beneficios como en las cargas, será proporcionado a sus respectivas cuotas.

Se presumirán iguales, mientras no se pruebe lo contrario, las porciones correspondientes a los partícipes *961 en la comunidad."
Al iniciarse la comunidad, ambas partes eran solteros y no tenían capital, ni fortuna. El apelante trabajaba en una vaquería y ella en los quehaceres del hogar. Vivían en condiciones infrahumanas y la casa donde cohabitaban prácticamente se le estaba derrumbando encima. Con sus respectivos quehaceres, ambos aportaban a la comunidad que habían constituido. Durante su convivencia, el apelante resultó ganador en la lotería electrónica, con la Lotto, e inmediatamente recibió su primer pago, abrió una cuenta de banco con la apelada. Este gesto es uno inequívoco de que la consideraba integrante fundamental de la comunidad. Ambos podían retirar de la cuenta.
Subsiguientemente, adquirieron una casa en conjunto y estipularon que la misma sería de los dos en común pro indiviso. Allí se fueron a vivir junto a sus hijos, hasta que ella abandona la misma, tras el casamiento de los apelantes.
Establecido que definitivamente existía una comunidad de bienes entre ellos, le competía al apelante demostrar que la participación de ella era menor del cincuenta porciento (50%) en los bienes adquiridos. El apelante no pudo rebatir esa presunción, por lo que se activa la misma con una participación de cincuenta porciento (50%) para Nancy e igual participación para Juan Antonio.
Para concluir, sostenemos que el Tribunal no incidió al imputarle temeridad a los apelantes. La jurisprudencia, en cuanto a la temeridad, ha sido consistente al concluir que la determinación de si un litigante ha procedido con temeridad, descansa en la sana discreción del Tribunal Sentenciador. Ramírez Anglada v. Club Cala de Palmas, 123 D.P.R. 339 (1989).
Se considera temeraria toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. Hawayek v. A.F.F., 123 D.P.R. 526 (1989). "El litigante temerario se arriesga al litigar el caso y debe asumir, pues, la responsabilidad por su acto." Fernández v. San Juan Cement Co. Inc., 118 D.P.R. 713 (1987).
De igual forma, la imposición de honorarios de abogado va vinculado a proceder con temeridad, ya que el mismo, aunque es discrecional, una vez el tribunal determina que la hubo, la condena de honorarios es imperativa. Fernández v. San Juan Cement Co. Inc., supra.
Respetamos el criterio del Tribunal Sentenciador, si entendió meritorio, al imputarle temeridad a los apelantes.
III. DICTMEN
Por todo lo antes expuesto, confirmamos la sentencia apelada y le reconocemos a la apelada el derecho a participar, en un cincuenta porciento (50%), de todo lo adquirido durante su convivencia marital con el apelante, incluyendo claro está, la mitad de todos los desembolsos anuales del premio de la Lotto.
Lo acordó el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General
ESCOLIO 2001DTA 72
1. "Desígnese como convivencia marital (more-uxorio) aquella relación "a manera de matrimonio" entre dos concubinos." Cruz v. Sue. Landrau Díaz, 97 D.P.R. 578 (1969).