ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| MARÍA F. BERNABÉ COTTO,<br><br>Apelante,<br><br>v.<br><br>SUCESIÓN LUIS ENRIQUE PARDO NIEVES, compuesta por LUIS ENRIQUE PARDO DÍAZ y RAFAEL ENRIQUE PARDO DÍAZ,<br><br>Apelada. | TA2025AP00695 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla.<br><br>Civil núm.: AG2022CV01613.<br><br>Sobre: división y liquidación de comunidad de bienes. |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 19 de marzo de 2026.

La señora María Bernabé Cotto (señora Bernabé) nos solicita que revoquemos la *Sentencia* emitida y notificada el 2 de septiembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Aguadilla. Mediante el referido dictamen, el foro apelado declaró sin lugar la demanda instada por la señora Bernabé contra la sucesión del señor **Luis Enrique Pardo Nieves** (señor Pardo Nieves), compuesta por sus hijos **Luis E. Pardo Díaz** y **Rafael E. Pardo Díaz** (Sucesión). A su vez, declaró con lugar la reconvención instada por la sucesión. En consecuencia, dejó sin efecto el usufructo que beneficiaba a la señora Bernabé.

La controversia planteada se reduce a revisar si, conforme a la jurisprudencia aplicable, se constituyó o no una comunidad de bienes por pacto implícito entre la señora Bernabé y el fenecido señor Pardo Nieves.

Por los fundamentos que expondremos a continuación, revocamos la *Sentencia* apelada y devolvemos el caso al foro primario para el cómputo y la adjudicación del crédito correspondiente a la señora Bernabé.

I

El 31 de octubre de 2022, la señora Bernabé instó su demanda al amparo de los Artículos 835 al 859 del *Código Civil de Puerto Rico*, 31 LPRA sec. 8191-8232[1]. En síntesis, la señora Bernabé alegó que ella y el causante sostuvieron una relación consensual, en virtud de la cual se constituyó una comunidad de bienes por pacto implícito; ello, desde el **1995 hasta el fallecimiento del señor Pardo Nieves el 7 de agosto de 2021**[2].

Adujo que, el 10 de septiembre de 2014, el causante redactó un testamento ológrafo, mediante el cual le legó $30,000.00, así como el uso y habitación de uno de los apartamentos del complejo residencial[3]. Ante ello, le solicitó al foro primario la división, liquidación y adjudicación de la presunta comunidad de bienes, cuyo valor estimó en un millón de dólares.

El 1 de diciembre de 2022, la sucesión presentó su contestación a la demanda junto con una reconvención[4]. En lo pertinente, negó que la señora Bernabé y el causante hubieran constituido una comunidad de bienes. Adujó que, desde el inicio de su relación, los bienes del fenecido señor Pardo Nieves eran de naturaleza privativa y parte de su herencia.

En su reconvención, la sucesión solicitó al Tribunal de Primera Instancia que dejara sin efecto el usufructo a favor de la señora Bernabé, el cual recaía sobre una casa. En cuanto a ello, alegó que la señora Bernabé no había hecho aportaciones económicas para el mantenimiento

---

[1] *Véase*, apéndice del recurso, entrada 1, SUMAC TA.

[2] También surge de sus alegaciones que, durante todo el periodo en que convivieron como pareja, ella trabajó, compartió ideas y asistió al fenecido señor Pardo Nieves en la administración de *Pardo Guest House*. Alegó que, entre las aportaciones que ella realizaba, se encontraban: **(1) el trabajo y administración de la hospedería, incluso cuando el causante se encontraba fuera de la Isla; (2) el cobro de los cánones de arrendamiento de los 10 apartamentos; (3) la limpieza y mantenimiento de los apartamentos; y, (4) otras gestiones para la conservación de los apartamentos, entre otras funciones.** Resaltó que el fenecido señor Pardo Nieves adquirió, a nombre de su hijo, señor Rafael E. Pardo Díaz, una casa de playa en Aguadilla, y que **dicha compra se pagó con el capital que generaba el alquiler de los apartamentos**. Finalmente, alegó que entre ambos acordaron radicar las planillas de contribución sobre ingresos ante el Departamento de Hacienda de Puerto Rico como casados, durante todo el tiempo en el que ambos sostuvieron su relación.

[3] El testamento fue debidamente adverado y protocolizado a tenor con la *Resolución* del 16 de mayo de 2022, en el caso número AG2021CV01039. Se trata del instrumento público número 91 del 2 de septiembre de 2022, elevado a escritura pública ante el abogado-notario Roberto I. Sosa Salinas.

[4] Entrada 6, SUMAC TPI.

de la casa o el pago de los servicios esenciales, como tampoco el pago de las contribuciones territoriales del CRIM.

Luego de varios trámites procesales[5], el 17 y 18 de junio de 2025 se celebró el juicio en su fondo. Tras escuchar los argumentos de las partes y recibir la prueba y los testimonios, el asunto quedó sometido para la consideración del tribunal[6].

El 2 de septiembre de 2025, el Tribunal de Primera Instancia emitió la sentencia objeto de este recurso[7]. En síntesis, concluyó que la señora Bernabé no había logrado probar la existencia de un pacto implícito de comunidad de bienes y que no procedía aplicar la figura del enriquecimiento injusto. Además, concluyó que el usufructo testamentario concedido a favor de la señora Bernabé se había extinguido.

Inconforme, el 8 de septiembre de 2025, la señora Bernabé presentó una moción de reconsideración[8]. El 18 de noviembre de 2025, el Tribunal de Primera Instancia la declaró sin lugar.

Aún inconforme, la señora Bernabé presentó este recurso y formuló los siguientes señalamientos de error:

> Erró el honorable tribunal al no entender que se configuraba una comunidad de bienes por pacto implícito.
>
> Erró el honorable tribunal al no valorizar las aportaciones de trabajo y servicios de la demandante como aportaciones al caudal de la comunidad de bienes.
>
> Erró el honorable tribunal al no aquilatar la prueba presentada en especial el informe pericial del contador como prueba de la configuración de la comunidad de bienes por pacto implícito.
>
> Erró el honorable tribunal al no entender que en ausencia al pacto implícito se configuró el enriquecimiento injusto.

---

[5] Destacamos que, el 9 de julio de 2024, la parte apelada presentó una solicitud de sentencia sumaria, que fue declarada sin lugar por el Tribunal de Primera Instancia. La referida determinación fue impugnada ante este Tribunal de Apelaciones. El panel hermano que atendió el recurso discrecional denegó su expedición. *Véase*, KLCE202401175.

[6] Según surge de las minutas de las vistas, testificaron varias personas, entre ellos, el señor **José Ernesto Ruiz Vega**, contador público autorizado, perito de la parte apelada. Entrada 109, SUMAC TPI.

[7] Entrada 113, SUMAC TPI.

[8] Entrada 114, SUMAC TPI.

> Erró el honorable tribunal al extinguir el usufructo aun cuando se otorgó mediante testamento, el derecho a la apelante a decidir cuándo sería razonable dejar de disfrutar de ese derecho.

(Énfasis omitido).

Tras varias incidencias procesales, el 12 de febrero de 2026, la parte apelante presentó la transcripción de la prueba oral (TPO) del testimonio de su perito, el señor José Díaz Crespo, contador público autorizado (CPA). En igual fecha, presentó su alegato suplementario.

Por su parte, el 15 de marzo de 2026, la sucesión presentó su alegato en oposición[9].

II

A

El surgimiento del concubinato no presume la existencia de una comunidad de bienes entre los concubinos. *González Rivera v. Robles Laracuente*, 203 DPR 645, 659 (2019). No obstante, hace más de 50 años que el Tribunal Supremo de Puerto Rico ha reconocido que un concubino o una concubina pueden probar la existencia de una comunidad de bienes. Véase, *Caraballo Ramírez v. Acosta*, 104 DPR 474 (1975). Desde entonces, nuestra jurisprudencia se ha orientado hacia el reconocimiento de la comunidad de bienes, expresa o implícita, y a la aplicación de la teoría del enriquecimiento injusto, cuando no se prueba la existencia de la comunidad de bienes. Ello fue reiterado en *Domínguez Maldonado v. ELA*, 137 DPR 954, 967-968 (1995):

> En el pasado hemos reconocido "el interés propietario de los concubinos con respecto a los bienes adquiridos o que hayan incrementado de valor vigente la relación, como resultado del esfuerzo, labor y trabajo aportados conjuntamente bajo cualquiera de las siguientes alternativas: '(1) como pacto expreso ... (2) **como pacto implícito que se desprende espontáneamente de la relación humana y económica existente entre las partes durante el concubinato ...** (3) como un acto justiciero para evitar el enriquecimiento injusto ...' ". *Ortiz de Jesús v. Vázquez Cotto*, 119 D.P.R. 547, 548-549 (1987). Véanse: *Caraballo Ramírez v. Acosta*, 104 D.P.R. 474, 481 (1975); *Cruz v. Sucn. Landrau Díaz*, 97 D.P.R. 578, 585 (1969). **Ahora bien, se tiene que probar**

---

[9] En esa misma fecha, la parte apelada presentó una solicitud de desestimación al amparo de las Reglas 83 y 16 del Reglamento de este Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, 216 DPR ___ (2025). Evaluados los fundamentos para solicitar la desestimación del recurso, declaramos **sin lugar** la misma.

**que se aportó esfuerzo y trabajo para producir o aumentar el capital objeto de la reclamación del concubino**.

(Énfasis nuestro).

De existir una controversia sobre la naturaleza de los bienes adquiridos por los concubinos durante su relación, al momento de culminar el concubinato por disolución, **el tribunal deberá examinar si la voluntad de los convivientes fue, efectivamente, someterse a una comunidad de bienes**. *Ortiz de Jesús v. Vázquez Cotto*, 119 DPR 547, 548-549 (1987). No obstante, en ausencia de un pacto expreso o uno implícito entre las partes, podrá deducirse lo que implícitamente se obligaron a aportar mediante un análisis de la relación humana y económica entre ellas. *Caraballo Ramírez v. Acosta*, 104 DPR, a la pág. 481. Si no se pudiere probar algún pacto expreso o implícito, o la existencia de una comunidad de bienes, entonces corresponderá probar la aportación de bienes, servicios o valores y la ganancia producida por estos para evitar un enriquecimiento injusto. *Íd.*, a las págs. 481-482.

El **pacto expreso** es un contrato o convenio para crear y establecer una comunidad de bienes voluntariamente. R. Serrano Geyls, *Derecho de familia de Puerto Rico y legislación comparada*, 1a ed., San Juan, Ed. Programa de Educación Jurídica Continua de la Universidad Interamericana de Puerto Rico, 2002, Vol. 2, pág. 858. Ahora bien, el referido convenio no tiene requisito de forma, por lo que puede ser verbal o escrito. Sin embargo, para establecer un pacto verbal expreso es menester evidenciar la manifestación indubitada e inequívoca de las partes. *González Rivera v. Robles Laracuente*, 203 DPR, a la pág. 661.

De otra parte, y en lo pertinente a la controversia que atendemos, el **pacto implícito** se configura cuando una persona realiza un determinado acto o adopta un comportamiento que, **sin declarar abiertamente voluntad alguna, permite inducir o inferir que tal voluntad existe y la presupone necesariamente**. Serrano Geyls, *op. cit.*, a la pág. 860.

Por tanto, el análisis va dirigido a establecer cuál fue el comportamiento de las partes en las relaciones económicas y humanas, que permitan inferir la voluntad constitutiva de la comunidad de bienes. El pacto implícito podrá probarse por todos los medios disponibles en Derecho. Serrano Geyls, *op. cit.*, a la pág. 861.

Con relación a la controversia que atendemos, conviene destacar lo que el Tribunal Supremo de Puerto Rico enfatizó en *Domínguez Maldonado v. ELA*, 137 DPR, a las págs. 969-970, cuando expresó que:

> Históricamente el Derecho ha sido instrumento forjador de cambios sociales. A través de la ley y de la jurisprudencia, se le ha facilitado a la mujer puertorriqueña la oportunidad de luchar por posiciones de igualdad y respeto en diversas áreas, sociales, económicas y familiares. Por lo tanto, **ante una situación de desbalance, y a pesar de la inexistencia de una sociedad legal de gananciales, un tribunal no puede desatender los reclamos de una mujer envuelta en el quehacer económico de su cónyuge, con la salvedad de que dichos reclamos sean probados**.

(Énfasis nuestro).

III

La apelante señala que el Tribunal de Primera Instancia erró al determinar que no se había constituido una comunidad de bienes por pacto implícito entre ella y el señor Pardo Nieves. Plantea que el foro primario incidió al no valorizar sus aportaciones de trabajo y servicios como aportaciones al caudal de la comunidad de bienes[10].

Arguye que, conforme a la prueba desfilada en el juicio, en especial, el informe pericial, logró evidenciar múltiples actos de voluntad común. Entre ellos, resalta que la señora Bernabé fue presentada como pareja ante terceros; fue beneficiaria de seguros de vida y de un legado testamentario; en su ausencia, el causante le encomendaba la administración y supervisión de los apartamentos; la incluía en sus planillas de contribución sobre ingresos; fungía como traductora para él; y, tenía firma en cuentas conjuntas. Sobre este último acto, resalta la existencia en una cuenta del

---

[10] Mediante su cuarto señalamiento, la parte apelante plantea que el Tribunal de Primera Instancia erró al extinguir el usufructo, aun cuando el causante le otorgó mediante testamento el derecho a decidir cuándo sería razonable dejar de disfrutar de ese derecho. No obstante, **la parte apelante no discutió este error, por lo que se tiene por no puesto**.

Banco Santander[11], en la que se depositaban los pagos de las rentas de los apartamentos y era utilizada para el pago de gastos relacionados al negocio de alquiler.

En atención a lo anterior, insiste en que el foro primario debió concluir que sí se había configurado una comunidad de bienes entre ella y el causante mediante un pacto implícito, por lo que tenía derecho a la mitad del capital generado entre ellos, computado a base del incremento en el valor de los bienes, así como sobre su presunta plusvalía, y el potencial para generar ingresos de estos.

Por su parte, en su alegato en oposición, los apelados, hijos del causante, reiteraron los argumentos presentados en sus mociones desestimatorias. En primer lugar, sostienen que la señora Bernabé no presentó evidencia alguna que demostrara la existencia de un pacto implícito, por lo que no existió una comunidad de bienes. Lo anterior, en virtud del carácter privativo de las propiedades que formaban parte del negocio de alquiler, que denominaron como "Los Apartamentos Pardo"; y, a que el causante le había legado, mediante el testamento ológrafo, el usufructo de un apartamento y $30,000.00. Subrayan que, para que se entendiera configurada una comunidad de bienes, se requería evidencia documental que demostrase que, durante la vigencia de la relación, el causante y la señora Bernabé adquirieron bienes en común.

En segundo lugar, al referirse al contenido del informe pericial del perito económico de la señora Bernabé, los apelados arguyen que su contenido carece de valor probatorio por descansar en un acto que describen como "altamente antiético e ilegal". En particular, se refieren a que las planillas de contribución sobre ingresos fueron firmadas por ambos concubinos como si fueran cónyuges. Aducen que el énfasis en esa prueba para demostrar la existencia de un pacto implícito refleja una carencia de toda otra prueba legal, ética y moral.

Concluimos que no les asiste la razón. Veamos.

---

[11] Se trata de la cuenta cuyo número asignado termina en 1424.

Conforme a la prueba desfilada, al inicio de la relación concubinaria, allá para el 1995, el señor Pardo Nieves fungía como contador para un hospital. Los ingresos devengados de ese trabajo fueron sustituidos más adelante por los ingresos generados por el alquiler de varios apartamentos, propiedad del causante. Ello quedó evidenciado en las planillas de contribución sobre ingresos, que fueron objeto de evaluación en los sendos informes periciales que tuvo ante su consideración el Tribunal de Primera Instancia[12].

Si bien no contamos con el testimonio vertido en juicio por la señora Bernabé, en la transcripción de la deposición que se le tomara, la cual fue admitida en evidencia en su totalidad, ella declaró bajo juramento que participaba de las actividades administrativas del negocio de alquiler del señor Pardo Nieves. En particular, que firmaba algunos de los contratos de alquiler, que había aportado muebles para los apartamentos, que los limpiaba y trabajaba con el patio[13]. Además, declaró como sigue:

> Porque yo los quería a ustedes como hijos. Bregué con ustedes con los cumpleaños, con las cosa [*sic.*] y todo. Cuidé a tu padre, le soporté a tu padre. Nunca se las pegué, nunca. ¿Hallo? Eso son cosas que llegan al corazón. **Y como yo trabajaba como macho allí porque si tenía que coger una picota, una picota yo bregaba allí en esos apartamentos. Tú lo sabes. ¿Sí o no? ¿Cómo yo trabajaba allí?**

Transcripción de la deposición de la señora Bernabé, a la pág. 65. (Énfasis nuestro).

Conforme la prueba presentada, inferimos que la conducta de los concubinos fue conducente a generar una comunidad de bienes, por lo que la señora Bernabé tiene derecho a reclamar el valor que le corresponde en dichos bienes o en el aumento en su valor. El pacto implícito quedó probado mediante el testimonio de la señora Bernabé y los sendos informes periciales de las partes litigantes, los cuales coinciden en que esta fue ama de casa y figuraba, para fines de las planillas de contribución sobre ingreso, como la esposa del causante desde el 1996.

---

[12] *Véase*, TPO, a la pág. 10.

[13] *Véase*, deposición tomada a la señora Bernabé, a las págs. 64 y 65. Entrada 105, SUMAC TPI.

Concluimos que, de la prueba desfilada, sí se podía inferir razonablemente que la labor doméstica y las aportaciones físicas y monetarias realizadas por la señora Bernabé al negocio constituyeron aportaciones concretas a la comunidad de bienes. Concluir lo contrario es errado y podría configurar un enriquecimiento injusto

Al analizar la sentencia dictada por el foro primario y los argumentos esbozados por la parte apelada, concluimos que ha mediado una confusión en el análisis de la doctrina jurídica aplicable, y la distinción entre la existencia de un pacto expreso o de un pacto implícito. Recordemos que el pacto implícito es aquel que se desprende **espontáneamente de la relación humana y económica** existente entre las partes durante el concubinato. Es decir, debemos referirnos a la conducta de las partes y, entonces, determinar si esta demuestra que ellas se obligaron implícitamente a aportar, y si cada una aportó bienes, esfuerzo y trabajo para beneficio común. *Caraballo Ramirez v. Acosta* 104 DPR, a las págs. 481-482.

Resaltamos que, en este caso, la naturaleza de la relación entre la señora Bernabé y el fenecido señor Pardo Nieves no es objeto de controversia. Tanto la apelante como los apelados han reconocido que existió una relación de casi 30 años, en la que medió **cohabitación, publicidad y permanencia**[14]. Ahora bien, para atender si existe o no un interés propietario sobre los bienes que ahora son parte del caudal del señor Pardo Nieves, corresponde analizar si la relación económica entre estos también sugiere el nacimiento de una comunidad de bienes.

En el caso de autos, el propio foro primario consignó en sus determinaciones de hechos[15] como sigue: que el señor Pardo Nieves designó a la señora Bernabé como su beneficiaria en algunos seguros de vida; que varios amigos del señor Pardo Nieves reconocieron que la señora

---

[14] Nótese que estos son considerados como algunos de los elementos básicos del concubinato. *Véase*, opinión de conformidad en *González Rivera v. Laracuente Robles*, 203 DPR 645, 658 (2019).

[15] *Véase*, entrada 113 SUMAC TPI, a las págs. 4-7.

Bernabé fue su pareja durante 25 años; que esta "bregaba" con las flores del apartamento; que incluso uno de los apelados describió en juicio las funciones de la apelante como de cocina, limpieza en el hogar y, en algunas ocasiones, ayudaba con los apartamentos[16]. Además, el tribunal determinó que el causante era el encargado de administrar el negocio de Los Apartamentos Pardo, aunque, en aquellas ocasiones en que salía de Puerto Rico, le dejaba el cuido del negocio a su compañera, la señora Bernabé.

De otra parte, el perito de la señora Bernabé, CPA Díaz Crespo, declaró sobre las planillas de contribución sobre ingresos presentadas ante el Departamento de Hacienda de Puerto Rico por el señor Pardo Nieves y la señora Bernabé. Con ese testimonio se probó que la pareja **radicaba su planilla conjuntamente y como casados; ello, por espacio de más de una década**[17]. Asimismo, declaró que **los concubinos tenían una cuenta bancaria en común**[18]. Estos actos demuestran que la voluntad de los convivientes fue, aun sin consignarlo por escrito, conformar una comunidad de bienes.

De acuerdo a la prueba desfilada, queda claro que la señora Bernabé aportó esfuerzo y trabajo para producir o aumentar el capital objeto de la reclamación; ello, sin recibir remuneración alguna. Así pues, sí se generó un vínculo económico entre los concubinos.

De otra parte, no nos persuade el argumento de la parte apelada sobre la presunta ilegalidad de presentar las planillas de contribución sobre ingresos como matrimonio, cuando no lo eran, y la deseabilidad de omitir esa prueba por razón de su ilegalidad. Ese asunto no está en controversia

---

[16] En cuanto a la labor doméstica, nos persuade la postura del tratadista citado al expresar que **el concubino que permanece en el hogar y realiza diariamente tareas hogareñas contribuye, notablemente, a la economía del concubinato y sería fácilmente cuantificable en dinero**. Además, **sostiene que ese trabajo no solo economiza a los concubinos el pago de salarios a otras personas, sino que también priva al conviviente que lo realiza la oportunidad de dedicarse al trabajo remunerado externo y de hacer así otro aporte de dinero a la comunidad**. R. Serrano Geyls, *op. cit.*, pág. 862.

[17] *Véase*, TPO, a la págs. 17 y 19.

[18] *Íd.*, a la pág. 82

y el fin con el que el tema fue traído a la consideración del foro primario fue a los únicos efectos de establecer los actos públicos e inequívocos que llevó a cabo el señor Pardo Nieves en reconocimiento de la naturaleza de su relación económica con la señora Bernabé. Su propósito se limitó a demostrar la intención de la pareja de consignar la existencia de una relación personal y económica, reconociéndose como cónyuges y beneficiarios mutuos ante instituciones públicas y privadas.

En ese sentido, concluimos que **sí** se conformó la comunidad de bienes por pacto implícito con relación a los ingresos generados por el negocio de alquiler y a los bienes adquiridos con los frutos y común esfuerzo de la pareja durante la vigencia de su relación consensual[19]. Por tanto, no cabe hablar de la obligación de la señora Bernabé de establecer, con preponderancia de prueba, el valor de su participación en los bienes adquiridos, pues se presume su participación igualitaria. No obstante, sí colegimos que se mantiene viva la controversia respecto a cuáles son los bienes del caudal que son de carácter privativo del causante, por ser bienes hereditarios, y su plusvalía, si alguna, por razón del esfuerzo común.

IV

Por los fundamentos expuestos, revocamos la *Sentencia* apelada y devolvemos el caso al foro primario para la adjudicación del crédito correspondiente adeudado a la apelante, señora María F. Bernabé Cotto, de manera compatible con lo aquí dispuesto.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[19] En su informe pericial, el CPA Díaz Crespo hace un desglose con las descripciones de las propiedades y el valor adjudicado. No obstante, aclaró que estos valores se realizaron con total deferencia a la planilla de caudal relicto, por lo que sostuvo que tales valores debían ser actualizados por un tasador profesional.