EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| María Elena González Rivera<br><br>Recurrida<br><br>v.<br><br>Raúl Robles Laracuente<br><br>Peticionario | Certiorari<br><br>2019 TSPR 225<br><br>203 DPR \_\_\_\_ |
| --- | --- |

Número del Caso:  CC-2018-846


Fecha: 27 noviembre de 2019


Tribunal de Apelaciones:

     Región Judicial de Carolina y Humacao
     Panel X


Abogados de la parte Peticionaria:


     Lcdo. José R. Negrón Fernández
     Lcda. Vanessa Medina Romero



Abogados de la parte recurrida:

     Lcdo. Gamaliel Rodríguez
     Lcda. Waleska Delgado Marrero
     Lcda. Carla Teresa Rodríguez Bernier



 Materia: Sentencia del Tribunal con Opinión de conformidad y Opiniones disidentes.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María Elena González Rivera

    Recurrida

      v.                     CC-2018-846      *Certiorari*

Raúl Robles Laracuente

    Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 27 de noviembre de 2019.

Examinada la petición de *certiorari* presentada en el caso de epígrafe, expedimos el auto solicitado y se dicta *Sentencia* mediante la cual modificamos la *Sentencia* emitida por el Tribunal de Apelaciones el 31 de julio de 2018, para revocar la determinación de que el bien inmueble localizado en la Urbanización Mansión Real es parte de una comunidad de bienes compuesta por el Sr. Raúl Robles Laracuente y la Sra. María Elena González Rivera, siendo dicho bien uno privativo del señor Robles Laracuente. Así modificada, se confirma el resto de la *Sentencia* del Tribunal de Apelaciones.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Feliberti Cintrón emitió Opinión de conformidad a la que se unieron el Juez Asociado señor Martínez Torres, la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Kolthoff Caraballo. La Jueza Presidenta Oronoz Rodríguez y los Jueces Asociados señor Estrella Martínez y señor Colón Pérez emitieron Opiniones disidentes. La Juez Asociada señora Rodríguez Rodríguez disiente sin Opinión escrita.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María Elena González Rivera

    Recurrida

      v.                     CC-2018-846      *Certiorari*

Raúl Robles Laracuente

    Peticionario

Opinión de conformidad emitida por el Juez Asociado señor FELIBERTI CINTRÓN, a la cual se unieron el Juez Asociado señor Martínez Torres, la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Kolthoff Caraballo.

En San Juan, Puerto Rico, a 27 de noviembre de 2019.

Coincido con la determinación que realiza una mayoría del Tribunal en este caso, por entender que un pacto implícito, como cuestión de derecho, no se limita a la relación humana entre las partes sin considerar también los vínculos económicos de los concubinos para establecer el interés propietario sobre un bien inmueble.

**I**

Los procedimientos en este caso ante el Tribunal de Primera Instancia comenzaron con la presentación de dos acciones civiles instadas por las partes de epígrafe de forma separada, las cuales posteriormente fueron consolidadas.

Por un lado, el 3 de abril de 2009, el Sr. Raúl Robles Laracuente (señor Robles Laracuente) presentó una demanda de desahucio en contra de la Sra. María Elena González Rivera (señora González Rivera) en el Caso Núm. JPE2009-0248, mediante la cual alegó que la señora González Rivera ocupaba una propiedad ubicada en la Urbanización Mansión Real en el Municipio de Ponce, que le pertenecía a él de forma exclusiva. Sostuvo que la señora González Rivera había residido en la propiedad por más de ocho (8) años sin pagar canon de arrendamiento.[1] Añadió que, a pesar de que exigió a la señora González Rivera que abandonara la residencia en reiteradas ocasiones, ésta se negó a hacerlo. Consecuentemente, reclamó el reembolso de los gastos incurridos de agua, luz y mantenimiento correspondientes a la vivienda, de los cuales no pudo beneficiarse. Finalmente, peticionó el desalojo de la propiedad como remedio al incumplimiento por parte de la señora González Rivera.

El 24 de abril de 2009, la señora González Rivera contestó la demanda y negó la mayoría de las alegaciones presentadas. Levantó varias defensas afirmativas, entre las que planteó que procedía la desestimación de la demanda dado su **interés y derecho propietario en calidad de dueña en común *pro indiviso* del 50% del inmueble. Alegó, a su juicio, que la propiedad forma parte de la comunidad de bienes habida**

---

[1] Es decir, desde que establecieron su relación de pareja, hasta después de su separación.

**entre ella y el señor Robles Laracuente durante la duración de su relación de concubinato.** Asimismo, requirió que el trámite del desahucio se modificara a uno ordinario para que el foro primario atendiera el conflicto de titularidad del bien inmueble en controversia. Conjuntamente, reafirmó la solicitud de desestimación del caso, en vista de una demanda instada por ella de forma paralela donde reclamaba la liquidación de la comunidad de bienes supuestamente compuesta por ambos y que, entre otros, incluía la residencia objeto del desahucio.

Por su parte, el 24 de abril de 2009 la señora González Rivera instó una segunda demanda en el Caso Núm. JAC2009-0242 en contra del señor Robles.[2] En lo pertinente, la señora González Rivera sostuvo que su relación de concubinato con el señor Robles Laracuente inició desde el mes de abril en el año 1988, mientras él aún estaba casado con la señora Rivera, y se extendió hasta el 2005. Destacó que durante ese tiempo convivieron de modo ininterrumpido en distintas propiedades inmuebles.

Sobre este particular, la señora González Rivera relató que inicialmente ambos residieron en una propiedad alquilada

---

[2] Cabe resaltar que la Sra. María Elena González Rivera (señora González Rivera) incluyó en la demanda a la Sra. Juana Rivera (señora Rivera), ex esposa del Sr. Raúl Robles Laracuente (señor Robles Laracuente). Durante el trámite procesal, el Tribunal de Primera Instancia ordenó la anotación de rebeldía de la señora Rivera, como resultado de su incomparecencia. Sin embargo, el foro primario incumplió con notificarle sobre el inicio del juicio, por lo que ordenó la notificación y reinicio del mismo en cumplimiento del debido proceso de ley. Así, para evitar dilaciones innecesarias, la señora González Rivera desistió con perjuicio de su reclamo en contra de la señora Rivera. *Resolución*, Apéndice, págs. 2313-2329.

en la Urbanización Jardines del Caribe en el Municipio de Ponce. Explicó que ella sufragaba la renta y demás gastos del hogar con el dinero que percibía de su negocio de venta de ropa interior femenina. Añadió que, en el mes de mayo de 1997, el señor Robles Laracuente compró un inmueble en la Urbanización Estancias del Golf Club en el Municipio de Ponce, y luego se lo donó mediante escritura otorgada el 21 de noviembre de 1997. Añadió que, posteriormente, el señor Robles Laracuente adquirió otra propiedad en la Urbanización Mansión Real -el 25 de abril de 1998-, donde se mudaron como pareja y donde ha permanecido residiendo hasta el presente. A base de ello, reclamó que su "derecho e interés propietario [equivale] a un 50% de participación *pro indiviso*" sobre todos los bienes de una supuesta comunidad de bienes, ya que convivieron en público concubinato, además de actuar como marido y mujer frente a terceros. Como evidencia de lo anterior, señaló que: los hijos y nietos que nacieron durante ese tiempo fueron reclamados como sus dependientes por el señor Robles Laracuente en su Planilla de Contribución sobre Ingresos; presentaron acciones judiciales en conjunto como matrimonio; y cuidó del señor Robles Laracuente luego que éste sufrió un accidente de motora. Además, planteó que trabajó, contribuyó y ayudó económicamente al señor Robles Laracuente durante su relación. Finalmente, sostuvo que al culminar la relación de concubinato en agosto de 2005, el señor Robles Laracuente se fue del hogar, y en ese momento, acordaron

verbalmente que éste le pagaría una suma mensual de $2,500 además de los gastos de las utilidades mientras la señora González Rivera residiese en la propiedad de la Urbanización Mansión Real, hasta la división de la supuesta comunidad de bienes. Sin embargo, el señor Robles Laracuente alegadamente incumplió con el referido acuerdo y dejó de pagar en octubre de 2008. Conforme a lo anterior, solicitó el inventario, avalúo, liquidación y división de la presunta comunidad de bienes habida entre ella y el señor Robles Laracuente; reclamó el 50% de todos los bienes muebles e inmuebles adquiridos durante el concubinato; una mensualidad de $2,500, como alimentos; el pago de las utilidades de la propiedad, acordadas y no pagadas, además de intereses legales, costas, gastos y $50,000.00 por honorarios de abogado.

En su contestación, el señor Robles Laracuente alegó que nunca hubo una relación de público concubinato con la señora González Rivera, ya que meramente pernoctaba ocasionalmente en la residencia de la señora González Rivera mientras que residía en otro lugar. **En cuanto a la propiedad inmueble de la Urbanización de Mansión Real, reiteró que era su propiedad exclusiva y así constaba inscrita en el Registro de la Propiedad.** También, arguyó que no recibió aportación económica alguna de la señora González Rivera. Indicó que la mantuvo económicamente y reclamó a sus hijos y nietos como dependientes. Señaló que la señora González Rivera no realizó aportación alguna sobre el bien inmueble con su

labor, trabajo o esfuerzo. Además, negó que existiera entre las partes algún pacto expreso, implícito o enriquecimiento injusto concerniente a la señora González Rivera. Planteó que la señora González Rivera no tenía derecho a una pensión de alimentos como exconcubina. Finalmente, peticionó la desestimación de la demanda, costas, gastos y honorarios de abogado.

El 11 de mayo de 2009, el Tribunal de Primera Instancia emitió una *Resolución* en el Caso Núm. J PE2009-0248 en la que dispuso que la acción de desahucio del señor Robles Laracuente debía ventilarse junto con la demanda de liquidación de comunidad de bienes instada por la señora González Rivera en el Caso Núm. J AC2009-0242. De esta manera, el trámite de desahucio continuaría por la vía ordinaria. Ordenó, además, la consolidación de ambos pleitos.

Tras varios trámites procesales,[3] el señor Robles Laracuente presentó una *Moción de sentencia sumaria* mediante la cual negó la existencia de una comunidad sobre los bienes adquiridos durante el concubinato y solicitó la desestimación de la demanda en el Caso Núm. JAC2009-0242, por entender que, según quedó establecido en la deposición

---

[3] En desacuerdo, el señor Robles Laracuente recurrió ante el Tribunal de Apelaciones mediante el recurso de *certiorari* KLCE200900769. El Tribunal de Apelaciones determinó que había errado el foro primario al consolidar las acciones, por lo que revocó la *Resolución* impugnada. La señora González Rivera recurrió entonces ante nos mediante el recurso de *certiorari* CC-2009-820 y este Foro dictó una sentencia revocatoria el 16 de diciembre de 2011, en la que determinó que la consolidación de ambas acciones era razonable. Véase, *Sentencia*, Apéndice, págs. 115-132.

de la señora González Rivera y la *Contestación a interrogatorio* del señor Robles Laracuente, no existía controversia sobre el hecho de que tuvieron una relación concubinaria desde 1992 hasta 2005; que la señora González Rivera no aportó dinero para adquirir bienes durante su relación; se limitó a poner su esfuerzo; y que dicho esfuerzo sólo consistió en la ayuda que le brindó al señor Robles Laracuente al realizar las tareas domésticas, acompañarlo a citas médicas, comprar sus medicamentos y cuidarlo mientras estuvo recluido en el hospital. Asimismo, adujo que lo anterior no era evidencia suficiente para establecer un pacto expreso o implícito. Añadió que tampoco aportó bienes o valores por los que debía recibir un crédito al amparo de la doctrina del enriquecimiento injusto. Por consiguiente, dada la inexistencia de una comunidad de bienes entre las partes, reclamó la desestimación.

Por su parte, la señora González Rivera se opuso a la moción de sentencia sumaria. Sostuvo, en síntesis, que existía controversia sobre hechos esenciales y pertinentes que impedían disponer del asunto sumariamente. En lo pertinente, alegó que durante los primeros años de la relación generó ingresos suficientes en su trabajo para cubrir los gastos del hogar en el que convivieron como marido y mujer desde 1988 hasta 2005, que tuvieron cuentas conjuntas y además, que contribuyó sustancialmente desde 1988 al desarrollo de los negocios del señor Robles Laracuente.

El 5 de abril de 2013, el Tribunal de Primera Instancia notificó una *Resolución* en la que denegó la solicitud del señor Robles Laracuente al concluir que existían controversias sobre hechos esenciales y pertinentes que impedían la disposición del caso por la vía sumaria.

El juicio en su fondo se celebró durante los días 3 al 7 y 10 al 12 de agosto de 2015. Declararon, entre otros testigos, la señora González Rivera, el señor Robles Laracuente y su hermano, el Sr. Francisco Robles Laracuente, el cual declaró sobre las corporaciones que creó junto a su hermano, ambos como propietarios, e identificó a los accionistas y sus participaciones en las distintas corporaciones. Además, testificaron como peritos el Sr. Rafael Rosario Cabrera y el Sr. José Alberto Silva Rivera a favor del señor Robles Laracuente y la señora González Rivera, respectivamente.

Culminado el juicio, tras aquilatar los testimonios presentados, la prueba documental admitida y los memorandos de derecho sometidos por las partes esbozando sus respectivas posiciones, el 5 de abril de 2016, el Tribunal de Primera Instancia notificó una *Sentencia* mediante la cual desestimó el reclamo de desahucio que inició el señor Robles Laracuente en el Caso Núm. JPE 2009-0248. De otra parte, accedió al reclamo de la señora González Rivera en el Caso Núm. JAC 2009-0242. Así, determinó que se estableció una comunidad de bienes por pacto implícito, pero únicamente, sobre el bien inmueble localizado en Mansión Real. Dispuso,

además, que los negocios del señor Robles Laracuente no formaron parte de la comunidad de bienes creada. Finalmente, concluyó que la prueba no reflejó deudas que pertenecieran a la comunidad de bienes establecida.

Así, el referido foro realizó las siguientes determinaciones de hecho:

. . . . . . . . .

3. Cuando el [señor Robles Laracuente y la señora González Rivera] comenzaron a convivir, **no** realizaron un pacto escrito para regular sus asuntos económicos, sino que cada cual pagaba ciertos gastos y actuaban como marido y mujer, inclusive parte del periodo de tiempo que convivieron y [el señor Robles Laracuente] seguía casado legalmente con la Sra. Juanita Rivera, estos actuaban como marido y mujer y le siguieron haciendo por varios años después que el [señor Robles Laracuente] se divorcia de la Sra. Juanita Rivera, con la que estuvo legalmente casado hasta el 1993.

. . . . . . . . .

**6. El [señor Robles Laracuente] comenzó en el 1997 cuando se mudaron a la Urbanización [Mansión Real] […], Ponce, Puerto Rico con una aportación monetaria mensual que fluctuaba todos los meses, para los gastos del hogar.**

**7. El inmueble sito en la Urbanización [Mansión Real] […], nunca ha estado a nombre de [la señora González Rivera] y fue adquirido por [el señor Robles Laracuente] a modo de sorpresa de este a la [señora González Rivera], de cambio de residencia y <u>es el único bien inmueble que forma parte de la Comunidad de Bienes que [el señor Robles Laracuente] sí creó con [la señora González Rivera]</u>.**

**8. Cuando el [señor Robles Laracuente] le dijo a la [señora González Rivera] que se mudarían a vivir a una casa que el compr[ó] en [Mansión Real],** llevó a la [señora González Rivera] a verla **y ambos aportaron <u>ideas</u> para hacerle mejoras a**

**dicha casa antes de mudarse.** Ya en ese momento había comenzado la comunidad de bienes entre ambos.

9. La [señora González Rivera] ha pagado por varios años al [Centro de Recaudación de Ingresos Municipales de Puerto Rico (CRIM)] las contribuciones que dicha entidad cobra por la propiedad de [Mansión Real] que está inscrita en el Registro de la Propiedad y el CRIM solamente a nombre del [señor Robles Laracuente].

10. La [señora González Rivera] le ha dedicado su máximo esfuerzo y recursos para mantener la casa de la Urbanización [Mansión Real], de forma que ese inmueble si es parte de una comunidad de bienes entre el [señor Robles Laracuente con la señora González Rivera], **aunque el inmueble está inscrito solamente a nombre del [señor Robles Laracuente],** la relación entre ambos, con respecto a esa propiedad, obliga que sea parte de la comunidad de bienes aquí se decreta existe entre ambos.

**11. El inmueble que [el señor Robles Laracuente] le regal[ó] a la [señora González Rivera], solo está inscrito a nombre de [é]sta y es el ubicado en la Urb. Estancias del Golf Club […], Ponce, Puerto Rico y ese no es parte de la comunidad de bienes que aquí establecemos, pues el mismo fue un regalo de[l] [señor Robles Laracuente a la señora González Rivera] en agradecimiento por muchos años de vida y cuido brindados por [é]sta [al señor Robles Laracuente].**

.    .    .    .    .    .    .    .

13. Los esfuerzos y aportaciones de [la señora González Rivera] no se limitaron a lavarle, plancharle, cocinarle y cuidar [al señor Robles Laracuente] y cuidar y mantener los inmuebles donde convivieron, sino que […] ayudó en algunas tareas de los negocios de Robles que existían **previo a que estos comenzaron a convivir.**

**14. La [señora González Rivera] realizó algunas aportaciones a los negocios de Robles durante los años que estos**

**convivieron como marido y mujer, pero la prueba reflej[ó] que estas no son del tipo de esfuerzo que permiten considerar a los negocios de Robles como parte de la comunidad de bienes que estos crearon pues esos negocios son producto de inversiones [del señor Robles Laracuente] anteriores a que conviviera este con la [señora González Rivera] y de los grandes esfuerzos de este y sus socios.**

15. La [señora González Rivera] ha tenido en diferentes periodos un negocio propio de mercancía en general, lo que en ocasiones le permitió generar suficientes ingresos para aportar trabajo, valores y esfuerzos en la vida en común de ella con [el señor Robles Laracuente].

.    .    .    .    .    .    .

27. [El señor Robles Laracuente] se fue de la casa en que convivía con la [señora González Rivera] en la Urb. [Mansión Real] alrededor del mes de agosto del año 2005.

.    .    .    .    .    .    .

37. La realidad de la prueba en nada permite concluir que la comunidad de bienes […] incluyera alguna de las empresas ni el aumento de valor de otras múltiples empresas que es dueño en todo o en parte el [señor Robles Laracuente].

**38. La comunidad de bienes que aquí se está decretando está formada por un único bien inmueble que es la casa en la Urbanización [Mansión Real]**[…].

39. La prueba nada reflej[ó] sobre deudas al momento del juicio que pertenecieran a la Comunidad de Bienes que aquí se decreta entre las partes en esta controversia. (Negritas y subrayado suplido).

Finalmente, a tono con sus hallazgos, el foro primario, luego de haber determinado que hubo un pacto implícito para establecer una comunidad de bienes entre ambos, concluyó que ésta únicamente se extendió sobre el bien inmueble

localizado en Mansión Real.  Además, aplicó la presunción establecida en el Art. 327 del Código Civil de Puerto Rico, 31 LPRA sec. 1272 y conforme a ello, puntualizó que la participación era en partes iguales (50%) sobre el valor activo del bien inmueble.

Por otro lado, debido a que el señor Robles Laracuente se obligó a pagar una mensualidad de $2,500.00 para posponer la liquidación de la comunidad de bienes, el foro primario concluyó que le adeudaba una cantidad de $287,502.00 a la señora González Rivera, junto al pago de gastos, costas y $25,000 por concepto de honorarios de abogado.[4]

En desacuerdo, ambas partes presentaron solicitudes de reconsideración, que fueron denegadas por el foro sentenciador.

---

[4]  La referida cuantía surge como resultado de que durante la navidad del año 2005 el [señor Robles Laracuente] solicitó a la [señora González Rivera] que endosara una anualidad que ambos adquirieron con National WesternLife Insurance Company por el valor inicial de $92,778.14.  De esa forma, las partes acordaron que el señor Robles Laracuente le pagaría una mensualidad a la señora González Rivera de $2,500.00 mensuales desde enero de 2006. En cuanto al origen del dinero, la señora González Rivera reconoció en su testimonio que el dinero inicial provenía de una de las corporaciones del señor Robles Laracuente.  *Sentencia del Tribunal de Primera Instancia*, Apéndice, págs. 2907-2908; *Transcripción [de la] vista de juicio en su fondo*, Apéndice, págs. 2996-3001.

Insatisfecho, el 15 de junio de 2016, el señor Robles Laracuente recurrió ante el Tribunal de Apelaciones.  Por su parte, ese mismo día, la señora González Rivera también presentó un recurso de apelación.[5]

Tras evaluar los planteamientos de ambas partes, el 2 de agosto de 2018, el foro apelativo intermedio notificó una *Sentencia* mediante la cual modificó, en parte, la sentencia del foro primario y devolvió el caso para que el referido foro determinara el monto de la indemnización que la señora González Rivera debía pagarle al señor Robles Laracuente por el tiempo que disfrutó exclusivamente de la casa en Mansión Real.  Ordenó, además, que se llevara a cabo el inventario, avalúo y tasación de la propiedad de Mansión Real, como parte de la comunidad compuesta por ambos, para culminar la división y adjudicación de la comunidad de bienes.

En lo concerniente a la casa en Mansión Real, el Tribunal de Apelaciones confirmó al foro primario en cuanto a que existía una comunidad de bienes por pacto implícito sobre el bien inmueble.  Fundamentó su conclusión en que el señor Robles Laracuente, al momento de comprar el bien inmueble, reflejó una **intención** de adquirirlo en común *pro indiviso* con la señora González Rivera.  Por ello, coincidió en que

---

[5]   Posteriormente, al igual que el Tribunal de Primera Instancia, el 20 de julio de 2016, el Tribunal de Apelaciones ordenó la consolidación de ambos casos. *Apelación*, Apéndice, pág. 2086.

ambos poseen una participación de partes iguales sobre el valor del bien inmueble.[6]

En desacuerdo, tanto el señor Robles Laracuente como la señora González Rivera, solicitaron reconsideración. El Tribunal de Apelaciones declaró *no ha lugar* ambas mociones.

El 21 de septiembre de 2018, el señor Robles Laracuente acudió ante este Tribunal mediante recurso de *certiorari* y planteó los siguientes errores:

> A. ERRÓ EL TRIBUNAL DE APELACIONES AL DETERMINAR, SIN PRUEBA ALGUNA, QUE IMPLÍCITAMENTE LAS PARTES CONSTITUYERON UNA COMUNIDAD DE BIENES SOBRE EL INMUEBLE.
>
> B. ERRÓ EL TRIBUNAL DE APELACIONES AL NO RECONOCERLE A ROBLES, COMO CUESTIÓN DE DERECHO, QUE AL DIVIDIRSE LA COMUNIDAD DE BIENES ES ACREEDOR A UN CRÉDITO POR LA MITAD DEL PRECIO DE COMPRA QUE PAGÓ POR EL INMUEBLE.
>
> C. ERRÓ EL TRIBUNAL DE APELACIONES AL RECONOCER LA EXISTENCIA DE UN CONTRATO DE TRANSACCIÓN ENTRE LAS PARTES MEDIANTE EL CUAL ROBLES LE PAGARÍA A GONZÁLEZ LA SUMA DE $2,500.00 MENSUALES HASTA QUE SE DIVIDIERA LA COMUNIDAD DE BIENES.
>
> D. ERRÓ EL TRIBUNAL DE APELACIONES AL NO RECONOCER QUE EL CONTRATO DE TRANSACCIÓN QUEDÓ TERMINADO O RESUELTO ANTE EL INCUMPLIMIENTO DE GONZÁLEZ CON SUS OBLIGACIONES CONTRACTUALES.
>
> E. ERRÓ EL TRIBUNAL DE APELACIONES AL CONFIRMAR LA IMPOSICIÓN DE HONORARIOS DE ABOGADO A ROBLES.

---

[6] El Juez Bonilla Ortiz disintió en lo concerniente a la imposición de honorarios de abogado por temeridad que impuso el Tribunal de Primera Instancia al señor Robles Laracuente. *Sentencia del Tribunal de Apelaciones*, Apéndice, pág. 36.

El Tribunal expidió el auto de *certiorari* presentado por el señor Robles Laracuente, pero limitado a la revisión del primer y segundo error señalados.[7]

## II.

### A. Concubinato

#### *i. Elementos generales*

El concubinato surge como:

> [M]anifestación del derecho fundamental del libre desarrollo de la personalidad, sin perfeccionar el emplazamiento en el estado conyugal, **se unen en una convivencia de cierta estabilidad y permanencia […] y constituyen con ella una familia que goza de protección como la creada a través de la unión matrimonial, aunque […] no es equivalente ni le puede ser aplicada la normativa reguladora del matrimonio en cuanto a las relaciones personales** y **patrimoniales de los convivientes.** (Negritas y subrayado suplido). R. Ortega Vélez, *Compendio de Derecho de Familia,* San Juan, Pubs. JTS, 2000, T. II, pág. 607.

Nuestro ordenamiento establece dos tipos de concubinato: (1) el *queridato* y el (2) *more uxorio.* El queridato surge cuando "uno o ambos están casados con otra persona y por tanto impedidos de casarse entre sí". Caraballo Ramírez v. Acosta, 104 DPR 474, 476 esc. 1 (1975). Por su parte, el concubinato *more uxorio* surge desde que "un hombre y una mujer con aptitud para casarse deciden vivir pública y notoriamente como un matrimonio, […] sin cumplir con las formalidades exigidas para este último". Torres Vélez v.

---

[7] La señora González Rivera acudió también ante este Tribunal, pero su recurso de *certiorari* fue denegado mediante *Resolución* de 2 de noviembre de 2018.

Soto Hernández, 189 DPR 972, 989-990 (2013). Véase Caraballo Ramírez v. Acosta, *supra*. Por ello, se considera como una unión similar al matrimonio, que, entre otros elementos básicos, cumple con los siguientes: (1) la cohabitación (comunidad de vida y lecho); (2) la publicidad o notoriedad; (3) la estabilidad o la permanencia y (4) la fidelidad. Ortega Vélez, *op. cit.,* pág. 608. Véase además, F. Galván Rivera, *La distribución patrimonial de las uniones de hecho*, 25 Rev. Jur. UIPR 395, 410-412 (1991). Asimismo, el tratadista Federico Puig Peña expresa acertadamente que "es sólo la unión *more uxorio* la que supone comunidad de vida, de habitación, de mesa, de existencia, en un vivir juntos y sentir juntos las necesidades del quehacer familiar y cotidiano". F. Puig Peña, *Las uniones maritales de hecho*, Madrid, Editorial Revista de Derecho Privado, 1949, T. XXXIII, pág. 1090. Véase además, C. R. Padilla Montalvo, *El matrimonio no formalizado en Puerto Rico*, 38 Rev. Der PR 355, 363 (1999).

**A pesar de las similitudes entre el concubinato y el matrimonio, el concubinato no posee los mismos efectos jurídicos.** En lo pertinente, si las partes no estipulan otro régimen económico, al momento de constituir el matrimonio surge la sociedad de bienes gananciales. Por el contrario, el concubinato no genera, automáticamente, derechos para las personas que viven en tal estado, ni acarrea el surgimiento de una sociedad legal de gananciales. Torres Vélez v. Soto Hernández, *supra*, pág. 990; Cruz v.

Sucn. Landrau Díaz, 97 DPR 578, 581 (1969); Torres v. Roldán, 67 DPR 367, 368 (1947); Correa v. Quiñones, 29 DPR 52, 54 (1921). Véase, también, L. Muñoz Morales, *El concubinato en Puerto Rico*, 17 Rev. Jur. UPR 160, 173 (1947).

El surgimiento del concubinato no presume la existencia de una comunidad de bienes entre los concubinos, por lo que ésta deberá ser probada por el concubino que plantea su existencia. Ortega Vélez, *op. cit.,* pág. 619.

### ii. Aspecto económico o patrimonial

Sabido es que en nuestro ordenamiento no existe una normativa que regule el concubinato. Como resultado, los tribunales han elaborado ciertos factores a evaluar para determinar los posibles efectos económicos (patrimoniales) de este tipo de relación.

No existe duda alguna de que al **adquirir bienes durante el concubinato "con aporte de ambos concubinos existe una verdadera comunidad de intereses a la que habrá de poner fin, mediante las normas que regulan la comunidad de bienes en Puerto Rico […]"**. (Énfasis nuestro). Íd., pág. 620. De esta forma, hemos señalado en varias ocasiones que los concubinos podrán demostrar un interés propietario con respecto a los bienes adquiridos o que hayan incrementado de valor durante la relación de la misma forma que se establece la existencia de una comunidad de bienes; entiéndase, mediante pacto expreso o pacto implícito. Asimismo, hemos reconocido una causa de acción por enriquecimiento injusto cuando se logra probar que la

cantidad aportada en bienes, valores y servicios produjeron ganancias, lo que da lugar a una compensación por la misma cuantía. Ortiz de Jesús v. Vázquez Cotto, 119 DPR 547, 548-549 (1987); Danz v. Suau, 82 DPR 609, 617-619 (1961).

Ante una controversia sobre la naturaleza de los bienes adquiridos por los concubinos, durante su relación, al momento de culminar el concubinato por disolución o división, el tribunal deberá examinar si la voluntad de los convivientes fue, efectivamente, someterse a una comunidad de bienes. Íd. La comunidad de bienes no se presume ni aplica de manera automática según mencionamos; su existencia debe ser probada por la parte que la plantea.

Hemos reconocido que la comunidad de bienes podrá ser establecida bajo cualquiera de las siguientes alternativas: (1) como **pacto expreso**; (2) como **pacto implícito** que surge espontáneamente de la relación humana y económica existente entre las partes durante el concubinato y que demuestra que se obligaron implícitamente a aportar, cada uno, bienes, esfuerzo y trabajo para beneficio común; y (3) como un acto justiciero para **evitar el enriquecimiento injusto** al probar que aportó bienes, valores y servicios que produjeron ganancias a compensar. Íd., pág. 623. Véase además, Caraballo Ramírez v. Acosta, *supra*, págs. 481-482; Cruz v. Sucn. Landrau Díaz, *supra*, pág. 585; Torres v. Roldán, 67 DPR 367, 369-371 (1947); Correa v. Quiñones, *supra*, pág. 54.

De esta forma, la profesora Ruth Ortega explica algunos de los criterios que se deberán tomar en consideración en

este proceso, según la jurisprudencia de este Tribunal, a saber:

> 2. […], los concubinos pueden consolidar expresa o tácitamente sus ingresos.
>
> 3. Los concubinos pueden, en el caso mencionado, participar por partes iguales en los bienes adquiridos con tales ingresos y si una de las partes ha retenido más de lo que le corresponde, la corte le obligará a devolver la porción retenida de más.
>
> 4. Aun en ausencia de un convenio o acuerdo entre el concubinario y su concubina, la parte perjudicada podrá exigir su participación en los **bienes conjuntamente adquiridos** en proporción a su aportación, con el objeto de evitar enriquecimiento injusto.
>
> **5. La concubina tiene derecho a probar en corte que existía un acuerdo expreso o implícito con su concubino para compartir los bienes acumulados por ambos.**
>
> **6. Este derecho de la concubina se extiende a que pruebe también que sin dicho acuerdo ella contribuyó con su trabajo o capital aunque su participación en los bienes en controversia no sea necesariamente igual.** (Énfasis suplido). Ortega Vélez, *op. cit.,* págs. 621-622.

Dadas las diferentes variantes aludidas anteriormente, resulta meritorio que pasemos a discutir las interpretaciones del pacto expreso o implícito y en la alternativa, explicar el enriquecimiento injusto como remedio en equidad. Veamos.

### iii. Pacto expreso

El pacto expreso es un contrato o convenio para crear y establecer una comunidad de bienes de origen voluntario. R. Serrano Geyls, *Derecho de familia de Puerto Rico y legislación comparada*, 1era ed., San Juan, Ed. Programa de Educación Jurídica Continua de la Universidad Interamericana de Puerto Rico, 2002, Vol. 2, pág. 858.

En lo pertinente, el pacto expreso no tiene requisito de forma, por lo que puede ser verbal o escrito. No obstante, para establecer un pacto verbal expreso es menester evidenciar la manifestación indubitada e inequívoca de las partes. Asimismo, las aportaciones realizadas por las partes en este tipo de pacto pueden acreditarse por cualquier medio probatorio. Danz v. Suau*, supra*, pág. 617.

### iv. Pacto implícito

Por su parte, el pacto implícito se considera un contrato que surge cuando "una persona realiza un determinado acto o adopta un comportamiento que, sin declarar abiertamente voluntad alguna, **permite inducir o inferir que tal voluntad existe y la presupone necesariamente**". (Énfasis suplido). Serrano Geyls, *op. cit.,* pág. 860 (citando a L. Diez Picazo, *Fundamentos de Derecho Civil Patrimonial,* V. I, Editorial Civitas, Madrid, 1993, págs. 134-135, 148-149 (2007)). Los derechos y la participación sobre los bienes/patrimonio allegados durante la relación pueden acreditarse a través de **un pacto implícito que se desprende de la relación humana y económica que se produjo durante la convivencia**

**concubinaria.** <u>Domínguez Maldonado v. ELA</u>*,* 137 DPR 954, 967-968 (1995); <u>Ortiz de Jesús v. Vázquez Cotto</u>, 119 DPR 547, 548-549 (1987)*;* <u>Caraballo Ramírez v. Acosta</u>, *supra*, pág. 481*;* <u>Cruz v. Sucn. Landau Díaz</u>*, supra.*

El nexo personal entre los concubinos "se describe no para encontrar en [éste] la voluntad de contratar sino más bien como trasfondo o escenario en el que se hacen entendibles las relaciones económicas entre las partes", Serrano Geyls, *op. cit.,* pág. 861. **Esta relación humana, conjuntamente con el comportamiento de las partes en las relaciones económicas permiten inferir la voluntad constitutiva de la comunidad de bienes.** <u>Íd.</u> El pacto implícito podrá probarse por todos los medios disponibles en Derecho. <u>Íd.</u>

Asimismo, esta correlación humana y económica entre las partes deberá demostrar que se obligaron implícitamente a aportar bienes, servicios y trabajo para beneficio común. **De esa forma, establecer la "inequívoca voluntad de hacer comunes todos o algunos de los bienes adquiridos a título oneroso durante la unión".** (Énfasis suplido). Ortega Vélez, *op. cit.,* pág. 620.

En lo concerniente a la evaluación de derechos y participación sobre un bien inmueble hemos tomado en consideración, entre otras cosas, que: el bien inmueble fue comprado por dinero privativo de una parte, el bien inmueble fue inscrito en el Registro de la Propiedad a nombre de una de las partes, y los pagos realizados en cuanto a

contribuciones, agua, alumbrado y las mejoras realizadas al mismo se hicieron con dinero privativo. Véanse, Martínez Santiago v. Dalmau Andrades, 93 DPR 191 (1966); Torres v. Roldán, 67 DPR 367 (1947); Vázquez v. Camacho, 43 DPR 659 (1932); Mojica v. González, 43 DPR 999 (1932). Asimismo, en nuestro pronunciamiento más reciente al evaluar la participación sobre un terreno en el que se construyó un bien inmueble consideramos "las libretas bancarias que evidenciaban el retiro de la cantidad de dinero necesario para la compra del solar en cuestión" y además, la aportación de bienes o servicios para la adquisición del terreno al establecer el carácter privativo. Torres Vélez v. Soto Hernández, 189 DPR 972, 990 (2013).

En lo pertinente a la controversia ante nos, el profesor Raúl Serrano Geyls menciona diversos eventos que denotan un pacto implícito, a saber:

> [E]l uso de los nombres de ambos concubinos en el nombre del negocio, la existencia de una cuenta bancaria en común, la compra de bienes en común y la coposesión de bienes, son ejemplos valiosos de elementos para acreditar la existencia del pacto. **No obstante, en cada caso deben examinarse detenidamente las circunstancias fácticas y, sin ánimo prevenido, determinar si de los aportes económicos ubicados en la "relación humana" existente, surge implícitamente una comunidad de bienes.** (Énfasis suplido). Serrano Geyls, *op. cit.,* pág. 862.

También, señala que ciertos sucesos, *per se*, **no** acreditan la existencia del pacto. Específicamente, menciona:

[L]os siguientes actos, cada uno por sí solo, no sostienen que exista pacto implícito: **trabajo en el negocio del otro concubino** aunque se le entrega una participación en las utilidades; **tareas domésticas en el hogar común […]; administración de los bienes del otro; simples gestiones económicas de la vida diaria y la contribución a los gastos del hogar o enfermedades.** (Énfasis suplido). Íd., págs. 861-862.

### v. Enriquecimiento injusto

Ahora bien, de no lograr establecer la existencia de una comunidad de bienes ya fuese por pacto expreso o implícito, la parte que solicita participación económica podrá acreditar que aportó bienes, valores y servicios, que produjeron ganancias y consecuentemente, como un acto justiciero para evitar el enriquecimiento injusto de la otra parte, reclamar el valor de bienes, valores y servicios y las correspondientes ganancias obtenidas. Caraballo Ramírez v. Acosta, *supra*, págs. 481-482. Específicamente, hemos establecido que:

Cuando la razón de pedir de la reclamante se basa en la teoría del enriquecimiento injusto y no en la existencia de una comunidad de bienes [por pacto expreso o implícito], no podría ampararse en la presunción del Art. 327 del Código Civil […]. **Sería obligación de ella probar con preponderancia de prueba el valor de su participación en los bienes adquiridos.** No obstante, la prueba de ese hecho no tiene que ser directa, pudiendo establecerse el valor de su participación mediante inferencias razonables. Íd., págs. 485-486.

El profesor Raúl Serrano Geyls señala con precisión varios ejemplos de cómo puede operar el enriquecimiento injusto en una relación de concubinato, estos son:

> [A]dquisición de bienes **conjuntamente** pero inscritos a nombre de uno solo; mejoras introducidas por un concubino en un bien del otro; beneficio real exclusivo para un concubino como consecuencia de la prestación del otro (ej.: en su poder los muebles del hogar común); **servicios prestados por un concubino que habrían enriquecido al otro** y adquisición por un concubino de un bien en prescripción adquisitiva. Serrano Geyls, *op. cit.,* pág. 864.

Además, señala que los promoventes de esta modalidad están sujetos a los requisitos de la teoría del enriquecimiento injusto y la inexistencia de otra acción legal para defender sus derechos. <u>SLG Sánchez v. SLG Valentín</u>, 186 DPR 503, 516 (2012) (citando a <u>Ortiz Andújar v. ELA</u>, 122 DPR 817, 823 (1988)).

### B. La comunidad de bienes

La comunidad de bienes existe cuando la propiedad de una cosa o de un derecho pertenece en común *pro indiviso* a varias personas. Art. 326 del Código Civil, 31 LPRA sec. 1271. La existencia de la comunidad de bienes en el concubinato **sólo se origina a través de un pacto expreso o implícito.**

Una vez probada la existencia de una comunidad de bienes, la división de este patrimonio se hará de acuerdo al pacto, si hubiere. En su defecto, el artículo 327 del Código Civil, *supra*, dispone que las participaciones "[s]e presumirán iguales, mientras no se pruebe lo contrario, las porciones

correspondientes a los partícipes en la comunidad". Díaz v. Aguayo, 162 DPR 801, 809 (2004).

## C. Apreciación de la Prueba

### i. Estándar de revisión apelativa

La Regla 42.2 de Procedimiento Civil dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos". 32 LPRA Ap. V, R. 42.2.

Como norma general, los foros revisores no debemos intervenir con las determinaciones de hecho, salvo que haya mediado pasión, prejuicio, parcialidad o error manifiesto. SLG Torres – Matundan v. Centro Patología, 193 DPR 920, 933 (2015); Dávila Nieves v. Meléndez Marín, 187 DPR 750, 770-771 (2013).

La norma jurídica de deferencia a las determinaciones de hecho se fundamenta en la apreciación de la prueba testifical por el adjudicador de los hechos porque, al ser una tarea llena de elementos subjetivos, es quien está en mejor posición para aquilatarla. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016). El Tribunal de Primera Instancia es el foro que tiene la oportunidad de escuchar el testimonio y apreciar el comportamiento de los testigos. Dávila Nieves v. Meléndez Marín, supra. Consistentemente, la tarea de adjudicar credibilidad y determinar la verdad de lo sucedido depende grandemente de la exposición del juez

o jueza a la prueba presentada. Dávila Nieves v. Meléndez Marín, *supra*.

Por tanto, se impone un respeto a la adjudicación de credibilidad del foro primario puesto que, por lo general, los foros revisores sólo contamos con "récords mudos e inexpresivos". Trinidad v. Chade, 153 DPR 280, 291 (2001) (citando a Pérez Cruz v. Hosp. La Concepción, 115 DPR 721, 728 (1984)). Es decir, los jueces en el trámite apelativo sólo tenemos ante nosotros un expediente que a lo sumo incluye una transcripción de prueba. L. Rivera Román, *La apreciación de prueba en el Tribunal de Primera Instancia y en el Tribunal de Apelaciones, en Perspectivas en la Práctica Apelativa: 25 años del Tribunal de Apelaciones de Puerto Rico*, Ed. SITUM, 2018, pág. 103.

Sin embargo, esta norma de deferencia judicial tiene límites y no supone inmunidad absoluta frente a la función de los tribunales revisores. Dávila Nieves v. Meléndez Marín, *supra*, pág. 771. Recientemente, en Pueblo v. Toro Martínez, 200 DPR 834, 858-859 (2018), hicimos alusión a Dávila Nieves v. Meléndez Marín, 187 DPR 750 (2013), donde definimos lo que significa que un juez incurra en pasión, prejuicio, parcialidad o error manifiesto en su adjudicación. Así, puntualizamos que se incurre en un error manifiesto cuando **"la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble"**. (Énfasis suplido). Íd., pág. 859. Además, indicamos que se considerarán erróneas las conclusiones del

tribunal si un análisis de la totalidad de la evidencia, nos lleva a concluir que el foro revisado erró, pues **"las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida"**. (Énfasis suplido). Íd.

### ii. Peso de la prueba

De ordinario, el peso de probar cada uno de los elementos de una causa de acción civil recae en la parte demandante. Regla 110 de las Reglas de Evidencia, 2009, 32 LPRA Ap. VI, R. 110. Concierne al juzgador de hechos la tarea de evaluar la suficiencia de la prueba, a tenor con el estándar **probatorio de preponderancia**. Ello consiste en establecer como hechos, aquellos que con mayor probabilidad ocurrieron. Zambrana v. Hospital Santo Asilo de Damas, 109 DPR 517, 521 (1980).

Por otro lado, como foro revisor nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la prueba pericial o documental presentada en un caso. González Hernández v. González Hernández, 181 DPR 746, 777 (2011).

## III

Conforme indicamos en la *Resolución* expidiendo el recurso, procedo a discutir el primer y segundo señalamiento de error en conjunto, relacionados con el bien inmueble en disputa.

En síntesis, el señor Robles Laracuente planteó que no existió una comunidad de bienes entre la señora González

Rivera y él, ya fuese por pacto expreso o implícito. Además, puntualizó que quedó establecido que adquirió el bien inmueble con su dinero, sin aportación económica alguna de la señora González Rivera. Por tanto, negó que la señora González Rivera tuviera participación alguna sobre el mismo, siendo un bien inmueble estrictamente de carácter privativo.

Por su parte, la señora González Rivera adujo que los tribunales apelados erraron al determinar que el patrimonio de la comunidad de bienes establecida mediante un pacto implícito se limitó a la residencia en la Urbanización Mansión Real, sin reconocer que el conjunto de los bienes muebles e inmuebles y negocios adquiridos durante el concubinato pertenecían a ambos. Específicamente, reclamó que existió un acuerdo con el señor Robles Laracuente de que todo lo que se adquiriría por esfuerzo común durante la relación, pertenecería a ambos en partes iguales.

Cabe notar que el Tribunal de Primera Instancia **concluyó que entre las partes se configuró una comunidad de bienes como resultado de un pacto implícito, pero únicamente en cuanto al inmueble ubicado en la Urbanización Mansión Real. Dictaminó, además, que cada uno posee como comuneros un 50% de participación sobre el referido bien inmueble** conforme a la presunción establecida en el Art. 327 del Código Civil de Puerto Rico, *supra*.

Posteriormente, el Tribunal de Apelaciones confirmó la determinación del foro primario y **fundamentó su conclusión en que la intención del señor Robles Laracuente al momento**

**de comprar el bien inmueble era adquirirlo en común *pro indiviso* con la señora González Rivera.** Además, modificó el dictamen a los únicos efectos de ordenar la devolución del caso al foro primario para que determine el monto de la indemnización que la señora González Rivera debería pagar al señor Robles Laracuente, por el tiempo que disfrutó del bien inmueble de forma exclusiva. Así, se ordenó que procediera con el trámite de la división y adjudicación de la comunidad de bienes correspondiente al inmueble.

Examinados los planteamientos de las partes, la prueba documental y la transcripción de los testimonios ofrecidos en el juicio, en armonía con el derecho aplicable, **concluyo que ambos foros erraron al determinar que existía una comunidad de bienes por pacto implícito entre las partes sobre el bien inmueble localizado en la Urbanización Mansión Real.** Veamos.

De los hechos probados por el Tribunal de Primera Instancia, dicho foro reconoció que la propiedad de Mansión Real fue adquirida durante el concubinato por el señor Robles Laracuente y siempre ha permanecido a su nombre. Además, quedó establecido que la señora González Rivera aportó ideas para hacerle mejoras al inmueble, y su única contribución monetaria concerniente al mismo fueron los pagos realizados al CRIM.[8] Entendió que ésta contribuyó a

---

[8] Cabe resaltar que solamente se presentó la copia de **dos (2) cheques como los pagos realizados** por la señora González Rivera al Centro de Recaudación de Ingresos Municipales (CRIM) sobre el bien inmueble localizado en la Urbanización Mansión Real, marcados como *Exhibit* 1

la comunidad, además, con su esfuerzo personal al realizar las tareas domésticas, además de haber cuidado de la salud del señor Robles Laracuente.

Ahora bien, incluso tomando como ciertas estas determinaciones, entiendo que no son suficientes para establecer una comunidad de bienes por pacto implícito sobre el bien inmueble en controversia.

Conforme al derecho antes esbozado, el criterio para que surja una comunidad de bienes por pacto implícito es que la relación humana y económica entre las partes establezca de forma inequívoca la voluntad de unir todos o algunos de los bienes adquiridos durante la relación. Véase, Ortega Vélez, *op. cit.*, pág. 620. **Claramente, la mera intención de una parte al momento de adquirir un bien inmueble, no es suficiente para generarle a la otra un interés propietario sobre el mismo.**

Tanto la prueba testimonial como documental constatan que el señor Robles Laracuente sufragó la mayoría de los gastos sobre la propiedad desde su adquisición. La señora González Rivera admitió que, durante el concubinato, nunca adquirieron bienes inmuebles conjuntamente ni tuvieron cuentas bancarias en común. De igual manera, el señor Robles Laracuente reconoció lo anterior.

Por otro lado, la señora González Rivera declaró que contribuyó a los gastos diarios de la familia mientras

---

durante el testimonio de la señora González Rivera. *Transcripción [de la] vista de juicio en su fondo*, Apéndice, págs. 2882-2884.

residían en la propiedad. A esos efectos, narró que realizó tareas domésticas, cuidó de su pareja mientras estuvo hospitalizado y le ayudó con algunas tareas de su trabajo (en particular, con la revisión de documentos de subastas y organizando cheques cuando éste llegaba a la casa).

No obstante, la prueba reflejó que ambas partes colaboraron en el cuidado mutuo durante sus respectivas enfermedades y hospitalizaciones.[9] En cuanto a las tareas mediante las cuales la señora González Rivera asistió al señor Robles Laracuente en su trabajo, quedó demostrado que el esfuerzo realizado no contribuyó al aumento de valor de los negocios[10] ni en "las múltiples empresas que es dueño en todo o en parte" el señor Robles Laracuente.[11]

En cuanto al bien inmueble, la señora González Rivera afirmó durante el juicio que desconocía sobre la adquisición de éste. Así, admitió que no estuvo presente ni proporcionó dinero al momento de la compraventa ni prestó garantía personal para el préstamo con el que el señor Robles Laracuente financió parte del inmueble. Además, aceptó que durante los diecisiete (17) años que llevaba residiendo en la propiedad de la Urbanización Mansión Real **nunca realizó un pago de renta sobre el inmueble**. Meramente, sostuvo que después de la compra, **aportó ideas para hacerle mejoras a la propiedad**.

---

[9]   *Sentencia del Tribunal de Primera Instancia*, Apéndice, pág. 2051.

[10]   Íd., pág. 2050.

[11]   Íd., pág. 2054.

Tras analizar lo anterior, determino que le asiste la razón al peticionario. Ello, porque el pacto implícito, como cuestión de derecho, no se limita a la relación humana entre las partes sin considerar los vínculos económicos de los concubinos para establecer el interés propietario sobre un bien inmueble. Ciertamente, la prueba no demostró una relación económica entre el señor Robles Laracuente y la señora González Rivera suficiente para establecer una comunidad de bienes sobre el bien inmueble en controversia. No existe controversia en cuanto a que las partes mantuvieron sus cuentas bancarias separadas y no adquirieron bienes ni tenían deudas en conjunto. Consecuentemente, no entremezclaron sus bienes y con ello, no quedó establecida la voluntad de hacer comunes todos o algunos de los bienes adquiridos durante su relación.

Por otra parte, quedó establecido que el señor Robles Laracuente pagó con sus bienes privativos la totalidad del pronto del inmueble, así como las mensualidades de la hipoteca que pesaba sobre éste. La señora González Rivera admitió que no realizó aportación alguna y sólo alegó que se limitó a realizar unos pagos sobre el CRIM. Según mencionamos anteriormente, la señora González Rivera solamente presentó la copia de **dos (2) cheques acreditando los pagos realizados.** Asimismo, durante su contrainterrogatorio al ser confrontada con su Deposición reconoció que el señor Robles Laracuente le pagó una mensualidad de entre $2,000 a $2,500 para efectuar los pagos

relacionados con la luz, agua, teléfono, cable, mantenimiento y **una empleada de servicio doméstico en la residencia de Mansión Real.**[12]

De igual forma, surge de las escrituras de compraventa y constitución de hipoteca admitidas en evidencia, que la señora González Rivera no compareció a los respectivos otorgamientos. A base de lo anterior, la prueba documental confirma que el señor Robles Laracuente es el **único titular** de la propiedad inmueble en cuestión. Asimismo, entiendo que la prueba presentada no logró demostrar que la señora González Rivera aportara **bienes o servicios para la adquisición de dicho inmueble** que le permita reclamar alguna participación o interés propietario sobre el mismo o que la hicieran merecedora de alguna compensación al amparo de la doctrina de enriquecimiento injusto. Véase, Torres Vélez v. Soto Hernández, *supra*, pág. 990.

Ante la inexistencia de un pacto implícito, la señora González Rivera debió probar que su aportación de bienes, valores y servicios, produjeron ganancias en la propiedad de Mansión Real que acreditara una compensación por enriquecimiento injusto. Sin embargo, entiendo que quedó establecido que el señor Robles Laracuente sacaba de su peculio el pago para la renta y las cargas económicas de los gastos diarios de la casa (luz, agua, teléfono, cable, mantenimiento y una empleada de servicio doméstico).

---

[12] *Transcripción [de la] vista de juicio en su fondo*, Apéndice, págs. 2909-2914.

Asimismo, la señora González Rivera explicó que continuaba trabajando mientras realizaba las labores diarias del hogar.[13] Como resultado de lo anterior, la evidencia presentada por la señora González Rivera no estableció un empobrecimiento de su parte, así como un correlativo enriquecimiento del señor Robles Laracuente.

En resumen, tras un análisis de las determinaciones de hechos discutidas y las conclusiones de derecho realizadas por el Tribunal de Primera Instancia conforme a la totalidad de la evidencia presentada a la luz del derecho aplicable, concluyo que incurrió en error manifiesto, ya que su apreciación se distancia de la realidad fáctica y el derecho aplicable. Por consiguiente, no se establecieron los elementos requeridos para configurar una comunidad de bienes por pacto implícito entre las partes en lo concerniente a la propiedad ubicada en la Urbanización Mansión Real. Tampoco se configuró un derecho a un remedio por enriquecimiento injusto. Así, la señora González Rivera no descargó la obligación de probar su reclamación.

Ahora bien, el razonamiento presentado en esta *Opinión de conformidad* no debe interpretarse de manera alguna como un menosprecio de las gestiones de la señora González Rivera en su relación con el señor Robles Laracuente durante el tiempo en que compartieron su vida en común. El dictamen se limita exclusivamente a los derechos de las partes sobre

---

[13] La señora González Rivera expresó que, de lunes a viernes, trabajaba en sus negocios y realizaba las labores diarias del hogar. Véase, *Transcripción [de la] vista de juicio en su fondo*, Apéndice, pág. 2763.

un bien inmueble. Además, la determinación se circunscribe a los hechos del caso, por lo que no afecta cualesquiera derechos que puedan ostentar las partes en otros casos sobre controversias similares que sean considerados por este Tribunal.

Por tanto, concluyo que el Tribunal de Apelaciones erró al concluir que sí existía una comunidad de bienes por pacto implícito sobre esta propiedad. [14]

## IV

Por los fundamentos antes expuestos, estoy conforme con la decisión de este Tribunal al ordenar la modificación de la *Sentencia* emitida por el Tribunal de Apelaciones el 31 de julio de 2018, para revocar la determinación de que el bien inmueble localizado en la Urbanización Mansión Real es parte de una comunidad de bienes compuesta por el señor Robles Laracuente y la señora González Rivera, por ser un bien privativo del señor Robles Laracuente.

ROBERTO FELIBERTI CINTRÓN
Juez Asociado

---

[14] Las posturas disidentes presentan aseveraciones y conclusiones que no son cónsonas con la prueba que consta en récord y con la totalidad de la transcripción del juicio que cuenta con un total aproximado de 1,100 páginas.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María Elena González Rivera

    Recurrida

       v.

                      CC-2018-0846

Raúl Robles Laracuente

    Peticionario


La Jueza Presidenta ORONOZ RODRÍGUEZ emitió una Opinión disidente.


En San Juan, Puerto Rico, a 27 de noviembre de 2019.

Disiento por entender que la Sentencia que antecede descartó las determinaciones de hecho que realizó el foro primario sin establecer que este cometió un error manifiesto en su apreciación de la prueba. En consecuencia, se concluye erróneamente que no se configuró una comunidad de bienes, aun cuando el Tribunal de Primera Instancia estimó probado que el concubino demandado **admitió** su existencia. Veamos.

Es una máxima hartamente conocida en nuestro ordenamiento que "los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, a menos que se demuestre que el juzgador actuó movido

por pasión, prejuicio o parcialidad o que incurrió en error manifiesto". <u>Dávila Nieves v. Meléndez Marín</u>, 187 DPR 750, 753 (2013). A esos efectos, la Regla 42.2 de Procedimiento Civil establece que "[l]as determinaciones de hechos **basadas en testimonio oral** no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos". 32 LPRA Ap. V, R. 42.2 (Énfasis suplido).

Esta norma está fundada en que "la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz". <u>Dávila Nieves</u>, *supra*, pág. 771. Ello implica que, "[p]or definición, un tribunal de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial". <u>Íd</u>. Los tribunales apelativos únicamente pueden ignorar las determinaciones de hecho que realice el foro primario si determinan "que en la actuación del juzgador de los hechos medió pasión, prejuicio o parcialidad, o que este incurrió en **error manifiesto**". <u>Íd</u>. (Énfasis suplido).

En este caso, el foro primario entendió probado **–a base de los testimonios vertidos en el juicio–** que el Sr. Raúl Robles Laracuente (señor Robles o peticionario) **admitió** a la Sra. María Elena González Rivera (señora González o recurrida) que existía una comunidad de bienes entre ambos.[15] No obstante, también

---

[15] "En varias ocasiones el Sr. Robles y la Sra. González hablaron de que **en lo que dividían las propiedades que tenían en común,** él le pagaría

resolvió que la comunidad de bienes que surgió como resultado de la relación de concubinato entre el señor Robles y la señora González solamente comprendió un inmueble localizado en la Urbanización Mansión Real en Ponce. Lo anterior, debido a que –durante los ocho (8) años que convivieron en dicha propiedad– la señora González "le ha dedicado **su máximo esfuerzo y recursos** para mantener la casa de la Urbanización Mansión Real".[16] Incluso, el Tribunal de Primera Instancia concluyó que "[l]os esfuerzos y aportaciones de [la señora] González Rivera no se limitaron a lavarle, plancharle, cocinarle y cuidar [al señor] Robles Laracuente […], sino que [la señora] González Rivera lo ayudó en algunas tareas de los negocios [del señor Robles Laracuente] que existían previo a que estos comenzaran a convivir".[17]

El Tribunal de Apelaciones no intervino con estas determinaciones; más bien, las validó.[18] En lo pertinente a la admisión del peticionario sobre la existencia de una comunidad

---

$2,500.00 mensuales y que ello se concretizó en el momento en que ella le endosó el certificado de la anualidad […]". *Sentencia del Tribunal de Primera Instancia*, Apéndice, pág. 2053. "De los $2,500.00 mensuales que [el señor] Robles se comprometió a pagar a la Sra. González Rivera, **para que esta aceptara posponer liquidar la comunidad de bienes que había entre ellos**, [el señor Robles] solo pag[ó] $19,998.00 y le adeuda a [la señora] González el resto, o sea $287,502.00". Íd. Cabe resaltar que en la Sentencia no se revocaron las determinaciones de hecho que realizó el Tribunal de Primera Instancia a base de este testimonio.

[16] Íd., pág. 2050 (Énfasis suplido).

[17] Íd.

[18] El Tribunal de Apelaciones no dejó margen a duda sobre su convicción de que las conclusiones del foro primario estaban sustentadas en la prueba:

> De un análisis sosegado y detenido del prominente expediente del caso, concluimos que las determinaciones de hecho consignadas en la sentencia impugnada, vistas a la luz de la extensa transcripción de la prueba, así como de las estipulaciones de hecho, encuentran base en la prueba. Por ello, y en ausencia de arbitrariedad, prejuicio o error manifiesto, debe prevalecer la norma de deferencia al dictamen emitido por el foro sentenciador.

*Sentencia del Tribunal de Apelaciones*, Apéndice, pág. 32. Coincido plenamente con esta apreciación.

de bienes, dicho foro expresó: "concurrimos con la determinación sobre el pago de la deuda que provenía como resultado **del acuerdo al que llegaron las partes para posponer la división de la comunidad de bienes** que nació producto de su relación".[19]

Un examen del expediente demuestra que la conclusión del Tribunal de Primera Instancia, según avalada por el Tribunal de Apelaciones, encuentra apoyo amplio en la prueba que se desfiló durante el juicio. En lo pertinente, la señora González declaró que el señor Robles acordó pagarle una mensualidad hasta tanto se dividiera la comunidad de bienes que se configuró entre ambos:

> P    Doña María, ¿cuando ustedes terminaron su relación concubinaria, usted, el señor Robles y usted, qué acordaron, si algo?
>
> […]
>
> TESTIGO
>
> Él y yo acordamos cuando él se fue, que mientras él estuviera fuera de la casa él iba a seguir mandándome los dos mil quinientos dólares ($2,500.00) mensuales, que me quedara en la casa que me iba a mandar los dos mil quinientos dólares mensuales **hasta tanto nosotros dividiéramos. Que cuando nosotros dividiéramos** él iba a dejar entonces de enviarme los dos mil quinientos dólares.[20]

Por su parte, el señor Robles caracterizó esa parte del testimonio de la señora González como una "mentira piadosa".[21]

---

[19] Íd., pág. 34.

[20] *Transcripción del juicio*, Apéndice, págs. 2840-2841 (Énfasis suplido). Véase también, íd., págs. 2906-2908 (donde la señora González testifica que el señor Robles "estaba consciente de que él había llegado a un pacto, un acuerdo conmigo cuando se fue en el 2005, que me iba a pasar los dos mil quinientos dólares hasta que dividiéramos a la mitad, pero que ahora mismo en el 2009, pues él no podía disponer, que si yo aceptaba quedarme en la casa y él me daba ciento cincuenta mil dólares.").

[21] Íd., págs. 3295-3296.

Aquilatados estos testimonios, el Tribunal de Primera Instancia dictaminó inequívocamente en su Sentencia que "[el señor] Robles le admitió su existencia a [la señora] González en varias ocasiones", refiriéndose a la comunidad de bienes producto de su relación concubinaria.[22] De lo anterior podemos colegir que el foro primario sencillamente no le creyó al señor Robles.

No obstante, y en total abstracción de la determinación de hecho antes transcrita, la Opinión de conformidad que acompaña esta Sentencia insiste que "no quedó establecida la voluntad de hacer comunes todos o algunos de los bienes adquiridos durante su relación". Opinión de conformidad, pág. 32. Según esta, los foros recurridos erraron al ignorar que "la mera intención de una parte al momento de adquirir un bien inmueble, no es suficiente para generarle a la otra un interés propietario sobre el mismo". Íd., pág. 30. No obstante, este argumento carece de méritos en el contexto del caso que nos ocupa, pues el foro primario no fundamentó sus conclusiones de derecho en este razonamiento, sino en las declaraciones que realizó la señora González cuando testificó en el juicio. Por tanto, el "error manifiesto" que se le imputa al Tribunal de Primera Instancia en este caso no se cometió, pues el foro primario no apoyó su conclusión en el fundamento que le atribuye la Opinión de conformidad, sino en determinaciones de hecho que realizó luego de aquilatar la credibilidad de los testigos.[23]

En vista de lo anterior, resulta evidente que la Sentencia que emite este Tribunal sustituyó las determinaciones de hecho que

---

[22] *Sentencia del Tribunal de Primera Instancia*, Apéndice, pág. 2053.
[23] Tampoco existe indicio alguno de que el Tribunal de Primera Instancia o el Tribunal de Apelaciones actuaron movidos por pasión, prejuicio o parcialidad al emitir los dictámenes recurridos.

realizó el foro primario por su propia apreciación sobre si la relación entre el peticionario y la recurrida produjo una comunidad de bienes. Según reseñado, la admisión del señor Robles sobre la existencia de una comunidad de bienes entre él y la señora González hacía innecesario este análisis. Véase Regla 803(a) de Evidencia, 32 LPRA Ap. VI, R. 803(a). De esta manera, la Sentencia –y la Opinión de conformidad que la sustenta– ilustran el tipo de error que los tribunales apelativos estamos propensos a cometer cuando nos apartamos del estándar de revisión que fija la ley en estas circunstancias. El foro primario está en mejor posición que este Tribunal para evaluar la evidencia que se desfiló ante sí y dirimir credibilidad al confrontar un conflicto en la prueba. Por entender que en este caso desatendimos la importancia de este precepto, disiento.


                                          Maite D. Oronoz Rodríguez
                                          Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| María Elena González Rivera<br><br>Recurrida<br><br>v.<br><br>Raúl Robles Laracuente<br><br>Peticionario | CC-2018-0846 | *Certiorari* |

Opinión disidente emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ.

San Juan, Puerto Rico, a 27 de noviembre de 2019.

Disiento vehementemente de la Sentencia emitida por este Tribunal, pues durante una relación, las personas que viven sin vínculo matrimonial pueden aportar a una comunidad de bienes mediante sus esfuerzos, labores y trabajos realizados en el hogar común. Decidir lo opuesto, no solo lacera los principios más básicos de la justicia y de la equidad, sino que es contrario a Derecho.

**I**

Como es conocido, las personas que deciden vivir en uniones consensuales pueden crear una comunidad de bienes. A inicios del siglo pasado, este Tribunal determinó que la única manera en la que se podía crear una comunidad de bienes en estas circunstancias era mediante pacto expreso. Morales v. Cruz Vélez, 34 DPR 834, 842 (1926). En ese momento, se decidió que la persona que colaboraba en el hogar mediante "su trabajo, su economía, su cooperación y sus recursos" no tenía derecho alguno en la liquidación de los bienes que

ayudó a adquirir, poseer y mantener. Íd., pág. 842. Al contrario, se concluyó que estas labores correspondían al "papel que generalmente representa una legítima esposa" y que meramente eran "incidentales a sus funciones de concubina". Íd., pág. 845.

Afortunadamente, este Tribunal revocó esa doctrina y reconoció que las personas que viven en uniones consensuales pueden crear una comunidad de bienes de distintas maneras. A esos fines, hemos pautado que, en el contexto del concubinato, se puede establecer una comunidad de bienes de los siguientes modos: (1) por pacto expreso; (2) por pacto implícito, o (3) por un acto justiciero para evitar el enriquecimiento injusto. Danz v. Suau, 82 DPR 609, 617-618 (1961); Torres v. Roldán, 67 DPR 367, 370-371 (1947). Por tanto, en controversias de esta naturaleza, los foros judiciales deben examinar las circunstancias particulares de cada caso para auscultar la existencia de una comunidad de bienes entre la pareja. Particularmente, en los casos en los cuales se alegue que hubo un pacto implícito, se puede probar que la intención de crear una comunidad "se desprende espontáneamente de la **relación humana** y económica existente entre las partes durante el concubinato". (Énfasis suplido). Danz v. Suau, supra, pág. 618.

A raíz de ello, este Tribunal comenzó a dar el debido reconocimiento a otros tipos de esfuerzos y labores que, aunque no necesariamente económicos, constituyen aportaciones a las comunidades de bienes. Ente éstos, resaltan los trabajos realizados en el hogar. En Cruz v.

Sucn. Landrau Díaz, 97 DPR 578, 586 (1969), se reconoció la existencia de una comunidad de bienes en virtud del "esfuerzo, la labor y el trabajo de ella, y de ambos conjuntamente". En detalle, el Tribunal concedió "especial énfasis al

reconocimiento de los esfuerzos, labor y trabajo de Cruz en el hogar de ambos durante la vigencia del concubinato". M. L. Figueroa Rodríguez, Concubinato en Puerto Rico: Un llamado al Legislador, 33 Rev. Der. P.R. 43, 58 (1993).

Asimismo, en Caraballo Ramírez v. Acosta, 104 DPR 474, 481 (1975), se concluyó que se puede demostrar la existencia de una comunidad de bienes mediante la colaboración, los esfuerzos y los trabajos que se realizan para el beneficio común. En ese sentido, se especificó que las aportaciones no tienen que ser económicas estrictamente y que no se debe interpretar que se "restringe el derecho de la demandante a lo que hubiese aportado en dinero a la comunidad". Íd. Por tanto, la colaboración en una comunidad de bienes "no se debe ver en un sentido limitativo sujeto solamente a si aportó dinero". C.R. Padilla Montalvo, El matrimonio no formalizado en Puerto Rico, 38 Rev. Der. P.R. 355, 373 (1999).

Particularmente, el profesor Raúl Serrano Geyls impugna la fallida noción de que las tareas domésticas no son aportes a una comunidad y expone lo siguiente:

> No me parece convincente esa postura, por el contrario creo que es muy inequitativa. El concubino que permanece en el hogar – y ya se dan casos en que es el hombre – y realiza diariamente tareas hogareñas, está contribuyendo notablemente a la economía del concubinato, está efectuando un

> "trabajo", que aunque usualmente se considera gratuito, es fácilmente cuantificable en dinero. Ese trabajo no sólo economiza a los concubinos el pago de salarios a otras personas, sino que también priva al conviviente que lo realiza de la oportunidad de dedicarse al trabajo remunerado externo y de hacer así otro aporte en dinero a la comunidad. R. Serrano Geyls, <u>Derecho de Familia de Puerto Rico y legislación comparada</u>, 1ra ed., San Juan, Ed. Programa de Educación Jurídica Continua de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico, 2002, Vol. II, pág. 862.

Cónsono con ello, este Tribunal ha reconocido en contextos similares que las labores domésticas constituyen una aportación de alimentos a los hijos o hijas. <u>Mundo v. Cervoni</u>, 155 DPR 422, 426 (2014). De igual modo, en <u>Morales v. Jaime</u>, 166 DPR 282, 311 (2005), defendimos el interés público de pensiones alimentarias de excónyuges en miras de proteger a las personas que se dedicaron a las tareas del hogar. De este modo, procuramos "que se trate con equidad a una ex-cónyuge como la del caso de autos; para que una mujer que se dedicó plenamente a las labores domésticas como madre y esposa, no sufra de repente un grave desequilibrio económico al ser enfrentada con un divorcio". Íd., pág. 316 (Fuster Berlingeri, J., Opinión de conformidad).

Como puede apreciarse, este Tribunal ha reconocido que los concubinos pueden aportar a la comunidad de bienes entre ellos de distintas formas. La jurisprudencia reseñada va dirigida precisamente a legitimar y a reconocer el valor significativo que tienen las labores en el hogar. Ello, con el propósito de garantizar que la persona que aporta y

colabora en una comunidad de bienes mediante la ardua labor doméstica tenga derecho a su porción correspondiente.

## II

En el caso ante nuestra consideración, la Sra. María Elena González Rivera (señora González Rivera) tuvo una relación en concubinato con el Sr. Raúl Robles Laracuente (señor Robles Laracuente). En la misma, la señora González Rivera realizó múltiples y consecuentes esfuerzos y labores dirigidas al bien común de la pareja y de los bienes que ocupaban en conjunto. Durante un período de **diecisiete (17) años**, la señora González Rivera asumió las labores domésticas del hogar, cuidó del señor Robles Laracuente en sus enfermedades, aportó al pago de las utilidades y gastos de la propiedad y asistió al señor Robles Laracuente con tareas de su trabajo.[24] Debido a lo anterior, los foros primarios

---

[24]Las aportaciones y esfuerzos de la Sra. María Elena González Rivera (señora González Rivera) no están en controversia. Tal como se reconoce en la Opinión de conformidad, el Sr. Raúl Robles Laracuente (señor Robles Laracuente) aceptó en una Moción de sentencia sumaria que la contribución de la señora González Rivera "consistió en la ayuda que le brindó al señor Robles Laracuente al realizar **las tareas domésticas, acompañarlo a citas médicas, comprar sus medicamentos y cuidarlo mientras estuvo recluido en el hospital**". (Énfasis suplido). Opinión de conformidad, págs. 6-7.

De igual modo, el Tribunal de Primera Instancia, en sus determinaciones de hechos, concluyó que la señora González Rivera le dedicó "su máximo esfuerzo y recursos para la mantener la casa" en controversia y que "ha tenido en diferentes periodos un negocio propio de mercancía en general, lo que en ocasiones le permitió generar suficientes ingresos para aportar trabajo, valores y esfuerzos en la vida común". Sentencia del Tribunal de Primera Instancia, Apéndice de certiorari, págs. 2050-2051.

Por último, el Tribunal de Primera Instancia también concluyó que la señora González Rivera aportó y asistió al

resolvieron que la prueba presentada demuestra indudablemente un pacto implícito entre las partes para vivir en comunidad, cuidarse mutuamente y aportar ambos al beneficio común, tanto en la relación humana como en la económica.

Ante ese cuadro, este Tribunal obvia el derecho aplicable y resuelve que la señora González Rivera no tiene derecho alguno a la liquidación de una comunidad a la cual ella aportó mediante una multiplicidad de esfuerzos y trabajos. En pleno siglo XXI, se descarta que las labores domésticas constituyan una contribución concreta a una comunidad de bienes. De este modo, se valida la preocupante y peligrosa premisa de que las labores domésticas realizadas por la señora González Rivera por casi dos (2) décadas no tienen valor alguno. Ello, en contra de una tendencia mundial dirigida a legitimar los efectos jurídicos del concubinato y de hasta equipararlo a la unión de un matrimonio. Véase, Figueroa Rodríguez, supra, págs. 61-74.

Como agravante, la Opinión de conformidad minimiza los esfuerzos de la señora González Rivera al razonar que no probó un empobrecimiento de su parte que justificara la existencia de una comunidad de bienes porque ella manejaba simultáneamente las tareas del hogar y las labores de su negocio propio. Es decir, se entiende que la persona que asume la carga doble de trabajo de un empleo más la labor doméstica

_____

señor Robles Laracuente en las gestiones de su trabajo. Íd., pág. 2051. Aunque estas aportaciones no se consideraron suficientes para que el negocio del señor Robles Laracuente formara parte de la comunidad de bienes entre ellos, sí son evidencia ulterior de los esfuerzos consecuentes de la señora González Rivera en pro del bien común.

no debe ser compensada por ello, sino penalizada. Lo anterior, sin duda alguna, perpetúa las nociones androcéntricas que precisamente rechazamos en los precedentes que enmarcan este disenso.

**III**

En fin, hoy se desvirtúa el progreso y el desarrollo de un ordenamiento jurídico que reconoce plenamente el importantísimo valor que tiene la labor doméstica realizada en el hogar. Desafortunadamente, hoy se pretende adjudicar mediante la desigualdad y la injusticia que permearon los pronunciamientos retrógradas de este Tribunal hace casi cien años en Morales v. Cruz Vélez, supra. Sin embargo, ello no corresponde a la realidad de la sociedad puertorriqueña y a los postulados de equidad y dignidad que nos toca reconocer. En consecuencia, respetuosamente disiento.


Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María Elena González Rivera

    Recurrida

                                    CC-2018-846      *Certiorari*

      v.

Raúl Robles Laracuente

    Peticionario

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 27 de noviembre de 2019.

Disentimos enérgicamente del curso de acción seguido por una mayoría de este Tribunal en el presente caso, ello por entender que, en lo que respecta a la causa de epígrafe, se configuró una comunidad de bienes por pacto implícito en la relación de concubinato existente entre el señor Raúl Robles Laracuente y la señora María Elena González Rivera. Lo anterior, debido a que, a nuestro juicio, dicho pacto puede establecerse mediante la aportación de bienes, servicios y trabajo para beneficio común, lo cual incluye -- claro está -- el trabajo doméstico. Veamos.

I.

Los hechos medulares que dan margen al presente litigio no están en controversia. En esencia, el caso de marras versa sobre la relación en concubinato habida entre el señor Robles Laracuente y la señora González Rivera desde 1988 hasta 2005. Periodo de tiempo en el cual éstos convivieron en distintas propiedades, incluyendo cierta residencia ubicada en la Urbanización Mansiones Reales, sita en el Municipio de Ponce, Puerto Rico, inmueble aquí en controversia.

Durante su convivencia con el señor Robles Laracuente, la señora González Rivera realizaba las tareas domésticas del hogar (entre éstas, lavaba, planchaba, cocinaba y mantenía los inmuebles en buenas condiciones), así como ayudaba en algunas tareas de los negocios de su compañero y cuidaba de éste durante su enfermedad.[25] Lo anterior es un hecho incontrovertido.

Claramente, la relación humana, afectiva y económica que se produjo durante el tiempo compartido entre el señor Robles Laracuente y la señora González Rivera -- lo cual comprende los mencionados esfuerzos y aportaciones realizadas por esta última -- denotan la intención de las

---

[25] Cabe señalar que en la *Moción de sentencia sumaria* presentada por el señor Robles Laracuente ante el Tribunal de Primera Instancia, éste admitió lo anterior al señalar que durante su relación la señora González Rivera se limitó a poner su esfuerzo. Esfuerzos que consistieron en la ayuda brindada al señor Robles Laracuente al realizar las tareas domésticas, acompañarlo a citas médicas, comprar sus medicamentos y cuidarlo mientras estuvo recluido en el hospital. Véase, págs. 6-7 de la *Opinión de conformidad*.

partes de configurar una comunidad de bienes por pacto implícito. Esto, a todas luces, tiene un valor. De ello, no tenemos duda alguna.

Y es que los trabajos efectuados en el hogar deben valorarse como una manera de contribuir al levantamiento de las cargas del matrimonio o, en este caso, del concubinato. **Valoración que, en esencia, evita que el concubino que se ha dedicado al ejercicio de su profesión vea incrementado su patrimonio en detrimento del otro concubino o concubina, quien ha dedicado gran parte de su tiempo a las tareas del hogar.** Véase, de manera análoga, R. M. Moreno Flórez, *El trabajo para la casa en el régimen de separación de bienes, ¿exclusivo, o compatible con una actividad remunerada?*, Revista de Derecho Civil, Vol. V (Núm. 4), 233-279 (2018) (*citando* a C. I. Asúa González, *El régimen de separación de bienes*, Tratado de Derecho de la Familia, Vol. IV, 2017, pág. 102).

En esa dirección, somos de la opinión que la aportación que deben realizar los concubinos no se limita a meros gastos económicos. Al respecto, el profesor y pasado Juez de este Tribunal, Raúl Serrano Geyls, en su obra *Derecho de Familia de Puerto Rico y legislación comparada,* expresó que:

> **El concubino que permanece en el hogar — y ya se dan casos en que es el hombre — y realiza diariamente tareas hogareñas, está contribuyendo notablemente a la economía del concubinato, está efectuando un "trabajo", que aunque usualmente se considera gratuito, es fácilmente cuantificable en dinero.** Ese trabajo no sólo economiza a los concubinos el pago de salarios a otras personas, sino que también priva al conviviente que lo realiza de

la oportunidad de dedicarse al trabajo remunerado externo y de hacer así otro aporte en dinero a la comunidad. R. Serrano Geyls, Derecho de Familia de Puerto Rico y legislación comparada, 1ra ed., San Juan, Ed. Programa de Educación Jurídica Continua de la Universidad Interamericana de Puerto Rico, 2002, Vol. II pág. 862. (Énfasis suplido).

Es decir, y parafraseando a la profesora Moreno Flórez, -- quien desde la cátedra en la Universidad Complutense de Madrid se ha dedicado a estudiar detenida y cuidadosamente estos temas --, no es necesario que ambos concubinos aporten dinero u otros bienes para sufragar dichas cargas sino que, ya que ambos tienen la obligación de sostener la vida familiar, deben cumplir con "cualquier otro tipo de necesidades que surjan en el seno de la familia siempre que se refieran a las personas que la componen". Moreno Flórez, *supra,* págs. 236-37 (*citando* la Sentencia del Tribunal Supremo de España de 14 de julio de 2011). Necesidades que consisten, entre otras, de la alimentación, el vestido y la asistencia médica.

En ese sentido, exigir lo contrario, entiéndase que la aportación sea exclusivamente económica, para poder concluir que se configuró una comunidad de bienes o, en la alternativa, para permitir una adecuada compensación a través de la figura del enriquecimiento injusto, -- a todas luces --, desvirtúa los sacrificios que implican encargarse de las labores domésticas. Ello es, precisamente, lo que lamentablemente permite la mayoría de esta Curia con la *Sentencia* que hoy emiten.

Por último, conviene señalar aquí que, en cuanto a una adecuada compensación, en la *Opinión de Conformidad* que acompaña la *Sentencia* que hoy se dicta se expresa que la señora González Rivera continuaba trabajando mientras realizaba las labores diarias del hogar.[26] Consecuentemente, se concluye que ésta no estableció un empobrecimiento de su parte, así como un correlativo enriquecimiento del señor Robles Laracuente.

**Sobre el particular, en un escenario muy similar al que hoy nos ocupa, la profesora Moreno Flórez, en el artículo *El trabajo para la casa en el régimen de separación de bienes, ¿exclusivo, o compatible con una actividad remunerada?*, previamente citado, expresa que -- para efectos del derecho a la compensación y la determinación de su cuantía -- esa simultaneidad del trabajo para la casa y del trabajo remunerado fuera del hogar, "habrá sido, muy probablemente, en detrimento, tanto de dedicación como de retribución, del trabajo fuera del hogar, con la consiguiente pérdida de oportunidades laborales y de ausencia de incremento de su patrimonio".[27]**

En fin, y a modo de epílogo, una mayoría de los jueces que componen este Tribunal entiende que, por encontrarse el inmueble de la Urbanización Mansiones Reales inscrito solo

---

[26] Surge del expediente que la señora González Rivera explicó que continuaba trabajando en sus negocios de lunes a viernes mientras realizaba las labores diarias del hogar. Véase, Apéndice de *certiorari*, pág. 2763.

[27] Véase, Moreno Flórez, *supra.* pág. 272.

a nombre del señor Robles Laracuente, y al haber sido adquirido con su dinero, no puede concluirse que se estableció una comunidad de bienes por pacto implícito sobre el mismo. Consecuentemente, descartan todas las labores y esfuerzos realizados por la señora González Rivera, no solo mientras ambos residían en el mencionado inmueble, sino también desde comienzos de su relación con el señor Robles Laracuente. Véanse págs. 32-34 de la *Opinión de conformidad.* Dicha determinación, injusta por demás, no puede ser avalada por el juez que suscribe.

## II.

Es pues, por todo lo anterior, que enérgicamente disentimos del curso de acción seguido por esta Curia en el día de hoy.

Ángel Colón Pérez
Juez Asociado